**REVERSE and REMAND in part; AFFIRM in part and Opinion Filed December 19, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01333-CV

**DAN WYDE, INDIVIDUALLY AND DAN WYDE & ASSOCIATES LLC, Appellants**
**V.**
**TATIANNA FRANCESCONI, Appellee**

**On Appeal from the County Court at Law No. 2**
**Dallas County, Texas**
**Trial Court Cause No. CC-16-02902-B**

## OPINION

Before Justices Bridges, Brown, and Whitehill
Opinion by Justice Bridges

After a bench trial, the trial court awarded appellants Dan Wyde, individually, and Wyde & Associates LLC (together, "Wyde") $7,500.00 in damages based on appellee Tatianna Francesconi's breach of contract for legal services. On appeal, Wyde challenges the award because (1) the evidence does not support the trial court's findings of fact and conclusions of law regarding Francesconi's affirmative defenses of failure to mitigate damages and fraud/equitable estoppel; (2) the damages award is unreasonable, arbitrary, and capricious in light of evidence establishing over $80,000 in damages; and (3) to the extent the trial court awarded attorney's fees to Wyde as the prevailing party in the underlying family lawsuit, such award is not supported by the record and is not the proper basis for calculating damages in this case. Because we conclude the record does not support Francesconi's affirmative defenses, we affirm the trial court's

judgment in part, reverse the judgment in part, and remand to the trial court for a new trial on damages based on Francesconi's breach of contract.

## Background

Francesconi first hired Wyde to represent her in an underlying criminal case involving family violence against her husband. Wyde successfully obtained a no-bill for the offense of aggravated assault with a deadly weapon in Collin County on her behalf. Following the no-bill, Wyde continued to represent her in a contentious divorce involving Husband, who is a neurologist.

On April 8, 2014, Francesconi signed a contract agreeing to pay Wyde $475 an hour for his litigation services. The agreement further provided, "in the event payment is not made as specified in this agreement, Attorney may withdraw from representation of Client and will owe no further duty as attorney for Client."

At the time Francesconi signed the contract, she was a freelance artist, but this provided her little income. She was never able to completely pay any invoice Wyde sent her, but she made sporadic payments between $200 and $500 against the balance she owed. According to Francesconi, Wyde never intended to hold her responsible for full payment. Instead, she believed Husband would be responsible for the fees.

Despite Francesconi's failure to pay under the fee agreement, Wyde continued to represent her and never considered withdrawing from representation.

On November 10, 2015, the trial court signed a final divorce decree ordering Husband to pay fifty percent of Francesconi's attorney's fees, which totaled over $77,000. However, the judgment left blank the amount of reasonable and necessary attorney's fees incurred and stated that "50% of this amount is _____." Wyde unsuccessfully tried to set a hearing for the trial judge to fill in the blank.

–2–

Subsequent to the divorce, the trial court scheduled a hearing regarding Husband's possible violations of the Electronic Communications Act based on information that surfaced during the divorce proceedings. The hearing was scheduled for January 19, 2016.

On January 18, 2016, Francesconi and Husband entered into a Rule 11 Agreement stating, in part, that the final divorce decree would be corrected with a nunc pro tunc decree and "[p]ursuant to the [Decree], [Husband] is responsible for half of the debt owed to attorney, Dan Wyde totaling $40,000. This will be paid in bi-monthly payments of $200 each, totaling $400 a month." The Rule 11 Agreement also provided, "Tatianna Francesconi shall be responsible for the remaining balance of attorney fees that are presently due and owing to Wyde & Associates in relation to this matter." Later that same evening, Francesconi fired Wyde.

When Wyde appeared the next day for the hearing, he discovered Husband's attorney had filed a motion to show authority arguing Wyde no longer had a right to represent Francesconi or a right to discuss or seek attorney's fees as a third-party beneficiary to the Rule 11 Agreement. The court agreed and continued to refuse any attempts by Wyde to resolve the outstanding attorney's fees issue, including his attempt to modify, reform, and correct the decree and a later filed motion to enforce the decree.[1]

Despite the decree requiring Husband to pay fifty percent of the attorney's fees, Wyde has never collected any money from Husband.

Wyde filed an original petition against Francesconi for breach of contract, and in the alternative, quantum meruit, based on her failure to pay the debt owed under the fee agreement. Francesconi answered and asserted numerous affirmative defenses, including equitable estoppel and failure to mitigate damages. The case proceeded to a bench trial.

---

[1] These issues are the subject of a separate appeal. *See Wyde & Assoc., LLC. v. Francesconi*, No. 05-17-00587-CV, 2018 WL 6273409 (Tex. App.—Dallas Nov. 30, 2018, no pet. h.) (mem. op.).

During the bench trial, Wyde testified he was seeking $77,779 in attorney's fees for the breach of contract in addition to the fees incurred in attempting to collect the debt. He testified he was not counting on Husband to pay part of the attorney's fees but "just hoping that the judge would see that he had the financial wherewithal to pay her reasonable and necessary attorney's fees for her to get a fair or a just result regarding the child custody issues."

Although Wyde admitted he could have filed a motion to withdraw when she stopped paying her bills, he explained he did not like taking a case and then filing motions to withdraw: "We attempt to avoid that at all costs." He did not believe Francesconi was in financial distress because she had an income of $4,000 a month between child and spousal support and money earned as a freelance artist. Rather, she simply chose not to pay him.

Francesconi testified she told Wyde several times she could not pay his bills, and he said she would not have to because "[Husband] was going to have to pay for it. . . . That was always the game plan." She felt like she was in an inferior bargaining position when she signed the fee agreement, and Wyde encouraged her to let him represent her in the family law matter because he was familiar with the criminal case. He said, "[I]t would be unwise to have too many lawyers, too many cooks in the kitchen." She told Wyde up front she did not have any money to pay him except for "maybe" using their tax refund to pay for the retainer.

She testified she relied on Wyde's representation that Husband would be responsible for her fees and "definitely" relied on that before signing the fee agreement. When she expressed her concern about Wyde's fee after the first hearing in the family law case, he told her not to worry about it because Husband would have to pay.

The trial court took the matter under advisement and subsequently signed a final judgment awarding Wyde $7,500.00 because "Plaintiffs have met their burden on some of their claims." The court issued findings of fact and conclusions of law in which the court determined Francesconi

–4–

breached a valid and enforceable contract for legal services; however, Wyde had a duty to mitigate his damages and failed to mitigate his damages by not terminating his services or withdrawing from representation following her initial breach on or about April 8, 2014. The court further concluded Wyde was estopped from recovering part of his damages because of his false or fraudulent representations to Francesconi. This appeal followed.

## Standard of Review

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). When the appellate record contains a reporter's record, as in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Id*. We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *Id*. When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate there is no evidence to support the adverse finding. *Id*. When reviewing the record, we determine whether any evidence supports the challenged finding. *Id*. If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Id*.; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (more than a scintilla of evidence exists when evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions"). When an appellant challenges the factual sufficiency of the evidence on an issue, we consider all the evidence supporting and contradicting the finding. *Id*. We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Sheetz*, 503 S.W.3d at 502. As long as the evidence falls "within the zone of reasonable disagreement," we

will not substitute our judgment for that of the fact-finder. *Id.* (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

We review de novo a trial court's conclusions of law. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We are not bound by the trial court's legal conclusions, but conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Sheetz*, 502 S.W.3d at 502. Incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory. *Id.* Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law. *Id.*

### Discussion

Before starting our analysis, we note Wyde's opening brief fails to include a detailed discussion of the findings of fact and conclusions of law he purports to challenge on appeal but instead merely lists them as part of "Issue 3." Despite any detailed discussion of evidence, we nonetheless liberally construe his issue as challenging the sufficiency of the evidence to support all the findings listed, which include both Francesconi's affirmative defenses of failure to mitigate damages and fraud/equitable estoppel. *See* TEX. R. APP. P. 38.9 ("briefing rules to be construed liberally"); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989) ("[I]t is our practice to construe liberally points of error in order to obtain a just, fair and equitable adjudication of the rights of the litigants."); *Wise Elec. Coop., Inc. v. Am. Hat Co.*, 476 S.W.3d 671, 680 n.9 (Tex. App.—Fort Worth 2015, no pet.).

We now consider whether the trial court erroneously concluded as a matter of law that Wyde had a duty to mitigate his damages following Francesconi's breach of contract. The trial court supported its conclusion by finding the following:

> Plaintiffs failed to mitigate their damages following Defendant's
> breach of contract by not terminating their services and withdrawing

their representation of Defendant in a timely fashion following Defendant's initial breach on or about April 8, 2014 and with each subsequent invoice, including their first invoice of April 22, 2014, which resulted in Defendant owing Plaintiffs a net amount of approximately $6,900.00.

Contract law broadly supports the idea that a plaintiff should minimize damages by taking affirmative steps, when applicable, to stop the accumulation of losses. *See, e.g.*, *Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 857 (Tex. 1999) (plaintiff asserting claim under DTPA has duty to mitigate damages); *White v. Harrison*, 390 S.W.3d 666, 675 (Tex. App.—Dallas 2012, no pet.) (landlord has duty to mitigate damages if a tenant abandons leased premises and failure to do so bars recovery to the extent damages reasonably could have been avoided); *Alamo Cmty. Coll. Dist. v. Miller*, 274 S.W.3d 779, 788 (Tex. App.—San Antonio 2008, no pet.) (wrongfully discharged employee must exercise reasonable diligence to mitigate damages by pursuing other employment or else employee is barred from recovering those losses that could have been avoided). Such rationale stems from economic considerations and avoidance of waste. Thus, the doctrine of mitigation of damages prevents a party from recovering for damages resulting from a breach of contract that could be avoided by reasonable efforts on the part of the plaintiff. *Great Am. Ins. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex. 1995); *see* RESTATEMENT (SECOND) OF CONTRACTS ch. 16, § 350 cmt. b ("Once a party has reason to know that performance by the other party will not be forthcoming, he is ordinarily expected to stop his own performance to avoid further expenditures."). As such, a claimant is required "to mitigate damages if it can do so with trifling expense or with reasonable exertions." *Gunn Infiniti, Inc.*, 996 S.W.2d at 857.

Despite these general contract principles, neither party has cited, nor have we found, any applicable case law regarding whether an attorney has a duty to mitigate damages by withdrawing from representation when a client breaches an attorney-client fee agreement. However, the Texas Disciplinary Rules of Professional Conduct indicate the mitigation of damages doctrine does not

impose a duty on attorneys to mitigate their damages when a client breaches a contract by failing to pay the agreed fee. Rule 1.15 dictates when a lawyer must or may withdraw from representing a client.

Rule 1.15(a) provides the circumstances under which an attorney's withdrawal is required, and rule 1.15(b) lists specific instances under which an attorney may seek withdrawal. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.15(a), (b). A client's failure to pay an agreed fee falls under rule 1.15(b)(5); therefore, an attorney may file a motion to withdraw in such circumstances, but nothing within the disciplinary rules of professional conduct mandates an attorney to withdraw and mitigate damages. In fact, after accepting representation, a lawyer should endeavor to handle a matter to completion. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.15 cmt 1. The *option* to withdraw from representation belongs to the lawyer. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.15 cmt 7 ("A lawyer may withdraw if the client refuses, after being duly warned, to abide by the terms of an agreement relating to the representation . . . ."). Thus, the fact that Francesconi had limited resources during the divorce did not automatically mandate Wyde's withdrawal as her attorney.

Here, Wyde explained he did not like taking cases and then filing motions to withdraw. He "attempt[ed] to avoid that at all costs." He was "dedicated to her cause" and "firmly believed" she had been a victim of domestic abuse and wanted to help her get primary custody of the children. He opposed the "Rambo litigation that the opposing counsel was attempting to do" and remained dedicated to Francesconi.

He further testified, "[W]hen we take on a client, we're loathed [sic] to make it a purely financial relationship, okay. We don't do business that way." Thus, rather than immediately filing a motion to withdraw after Francesconi failed to pay his fees, Wyde continued with his duty to represent his client. *See Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—

Houston [1st Dist.] 2005, pet. denied) (attorney has duty to zealously represent client within bounds of law). As he said, "we stuck it out . . . we aren't just lawyers who say pay us or to hell with you." This philosophy should be encouraged given the nature of the attorney–client relationship, which is one encompassing a fiduciary duty and confidentiality, thereby making it different from other relationships such as landlord-tenant that apply the mitigation of damages doctrine. Moreover, requiring or encouraging attorneys to file a motion to withdraw as soon as a client fails to pay conflicts with the aspirational goals of the Texas Lawyer's Creed, which reminds attorneys that "[a]s members of a learned art we pursue a common calling in the spirit of public service" and are "responsible to assure that all persons have access to competent representation." *See Texas Lawyer's Creed–A Mandate for Professionalism* (adopted November 7, 1989); *see also* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.15 cmt 1 ("Having accepted the representation, a lawyer normally should endeavor to handle the matter to completion."). Accordingly, the trial court erroneously concluded as a matter of law that Wyde had a duty to mitigate his damages.

We now consider whether the damages award can be sustained under Francesconi's second affirmative defense of fraud/equitable estoppel. The trial court made the following relevant finding of fact (finding 24): "Plaintiffs expressed to Defendant that she should pay the amount of Plaintiffs' invoices that she could afford and then Plaintiffs would look to Defendant's ex-husband to pay the remainder of Defendant's outstanding balance owed to Plaintiffs." Because Wyde challenges the sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate there is no evidence to support the adverse finding. *Sheetz*, 503 S.W.3d at 502.

Equitable estoppel is an affirmative defense that is established when: (1) a false representation or concealment of material facts; (2) is made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted upon; (4) to a party without

knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998); *Sefzik v. City of McKinney*, 198 S.W.3d 884, 895 (Tex. App.—Dallas 2006, no pet.). The elements of equitable estoppel are substantially the same as the elements of fraud. *Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 524. Thus, Francesconi was required to establish that Wyde falsely represented, with his knowledge of such falsity, that he expected Husband and not her to pay the legal fees. *Id.* at 515.

Here, the record indicates Wyde encouraged Francesconi to continue their attorney-client relationship after he successfully no-billed her criminal case because he was familiar with the underlying facts. Francesconi told Wyde up front she did not have any money to pay him except for "maybe" using their tax refund to pay for the retainer. She testified she relied on Wyde's representation that Husband would be responsible for her fees and "definitely" relied on that before signing the fee agreement. She had the impression and was told Husband would have to pay for everything.

Wyde testified he explained to Francesconi that if there is any legal basis or remedy to recover attorney's fees, he tries to collect them as "part of [my] fiduciary obligation." He told Francesconi he would attempt to minimize costs and fees and recover as much as he could from Husband: "That's our duty in providing competent legal representation to her."

None of this testimony establishes any false representations by Wyde. Nothing indicates that at the time Wyde told Francesconi "he would look to Defendant's ex-husband to pay the remainder" of the fees his statement was false or made recklessly without knowledge of the truth. *Id.* at 526. To the contrary, it is routine in family law cases for attorneys to seek recovery of their fees from a spouse and for the trial court to award such fees. *See* TEX. FAM. CODE ANN. § 6.708(c) ("In a suit for dissolution of a marriage, the trial court may award reasonable fees and expenses."),

§ 106.002(a) (court may render judgment for reasonable attorney's fees in a SAPCR proceeding); *see also In re T.L.T.*, No. 05-16-01367-CV, 2018 WL 1407098, at \*4 (Tex. App.—Dallas Mar. 21, 2018, no pet.) (mem. op.) (recognizing trial court's broad discretion to award attorney's fees in suit for dissolution of marriage); *Tull v. Tull*, 159 S.W.3d 758, 760 (Tex. App.—Dallas 2005, no pet.) (recognizing trial court's broad discretion to award attorney's fees under section 106.002).

Moreover, paragraph 15 of the legal services contract, which Francesconi initialed, provided the following:

> It is expressly agreed and understood that NO PROMISES OR GUARANTEES as to the outcome of the case have been made to Client by Attorney. It is further expressly agreed and understood that no other representations have been made to Client, except for those set out in this Employment Contract.

As such, the record contains no evidence supporting the trial court's finding Wyde made any false representations. Because we conclude there is no evidence Wyde made any false representations, we do not consider whether there is evidence satisfying the other elements of fraud. *See* TEX. R. APP. P. 47.1. Likewise, because there is no evidence supporting Francesconi's affirmative defense of fraud/equitable estoppel, the evidence is legally insufficient to support the damages award. Accordingly, we sustain Wyde's third issue. Because of our disposition of this issue, we need not consider Wyde's first and second issues challenging the amount of damages awarded. TEX. R. APP. P. 47.1.

**Conclusion**

We reverse the trial court's judgment awarding $7,500 in damages, and remand the case to the trial court for a new trial on damages based on Francesconi's breach of contract.

–11–

We affirm the judgment in all other respects.

            /David L. Bridges/
            DAVID L. BRIDGES
            JUSTICE

171333F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAN WYDE, INDIVIDUALLY AND
DAN WYDE & ASSOCIATES LLC,
Appellants

No. 05-17-01333-CV          V.

TATIANNA FRANCESCONI, Appellee

On Appeal from the County Court at Law
No. 2, Dallas County, Texas
Trial Court Cause No. CC-16-02902-B.
Opinion delivered by Justice Bridges.
Justices Brown and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding damages and **REMAND** to the trial court for a new trial to determine damages based on appellee Tatianna Francesconi's breach of contract. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that appellants DAN WYDE, INDIVIDUALLY AND DAN WYDE & ASSOCIATES LLC recover their costs of this appeal from appellee TATIANNA FRANCESCONI.

Judgment entered December 19, 2018.

–13–