**AFFIRMED and Opinion Filed June 30, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-01329-CV

### ZIA UL-HAQ SHEIKH, Appellant
### V.
### JANE DOE, Appellee

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-08987**

## MEMORANDUM OPINION

Before Justices Molberg, Goldstein, and Smith
Opinion by Justice Smith

Zia Ul-Haq Sheikh appeals the trial court's judgment in favor of Jane Doe on her claims of sexual exploitation by a mental health services provider, counseling malpractice, breach of fiduciary duty, abandonment, sexual assault, and negligence per se. In his brief, Sheikh raises ten issues arguing the evidence was legally and factually insufficient to establish he acted as a mental health services provider or that he was the direct or indirect cause of Doe's mental anguish; he cannot be liable for attorney's fees, breach of fiduciary duty, clergy malpractice, abandonment, sexual assault, or negligence per se; the trial court abused its discretion in admitting certain expert witness testimony; the trial court's award of $1.5 million for mental anguish

was excessive and based on insufficient evidence; and no clear and convincing evidence supported the trial court's award of exemplary damages. We reject these challenges and affirm the trial court's judgment.

In July 2018, Doe filed her original petition against Sheikh. In her second amended petition she alleged six causes of action: sexual exploitation by a mental health provider, counseling malpractice, breach of fiduciary duty, abandonment, sexual assault, and negligence per se. The petition claimed Sheikh was a clergyman at the Islamic Center of Irving from 2005 to March 2017 providing family counseling, marriage counseling, and other mental health services to his congregants. The petition contained a multitude of factual allegations concerning counseling, family relationships, financial arrangements, and sexual encounters between the parties occurring between 2009 and 2016, causing injury to Doe.

At a trial before the court in July 2019, Doe's testimony supported the allegations made in her second amended petition. Doe testified that, from 2009 to December 2016, Doe was a member of Sheikh's congregation, and Doe's mother received marital counseling and family counseling from Sheikh. In 2010, when Doe was thirteen years old, Doe began regular counseling sessions with Sheikh, and these sessions continued until December 2016. Over the years, Sheikh counseled Doe on family relationships; bullying Doe was experiencing; difficulties at school; and, shortly after Doe turned nineteen, Doe's desire to get married. Sheikh sent Doe pictures of prospective spouses that she found unsuitable. Sheikh responded that it

seemed like "no one wants to get married except me." Doe asked about Sheikh's desire to get married, and Sheikh said "he had a few spots open." Doe and Sheikh began speaking on a video chat application and discussed why Doe wanted to get married and why she would want to marry an older man. At that time, Doe was nineteen, and Sheikh was "almost 30 years older" than Doe.

Sheikh and Doe continued to video chat, and Doe did not use her regular cell phone to talk to Sheikh because she did not want her mother or anyone to come across the messages and get Sheikh in trouble. The video chats became increasingly sexual, and Doe testified "being sexual [was] the only way to keep [Sheikh] in a conversation." In late 2016, the intensity of the relationship increased, with Sheikh calling or texting Doe 689 times in December 2016.

On the night of December 5, 2016, Sheikh called or texted Doe forty times, and he sent Doe an address and told her to meet him at noon the next day. On December 6, 2016, Doe went to the address and discovered it was a motel. As alleged in Doe's second amended petition, Doe testified to Sheikh's having sexual intercourse with her at the motel. Prior to this encounter, Doe testified, she had not kissed or held hands with a boy.

During the sexual encounter, Doe had "an out-of-body experience" and "felt like a rusty metal pipe going inside" her. Doe could "hear [herself] screaming inside [her] brain." In the weeks that followed, Doe experienced weight loss, trouble sleeping, nightmares, and throwing up. Many times after the sexual encounter, Doe

tried telling Sheikh that she needed to talk to him, but Sheikh began blocking Doe's phone number from being able to call or text his phone. When Sheikh blocked Doe, Doe "felt really suicidal." Doe felt cut off from her community at the mosque, and she felt physical pain to the extent she "just threw up from the stress and things that I was dealing with." Doe tried many times to explain to Sheikh that she was experiencing mental anguish, but Sheikh was not responsive. From February 2017 until November 2017, Doe experienced "suicidal thoughts as a result of [her] interactions with" Sheikh.

On August 8, 2019, the trial court signed a final judgment awarding Doe $1.5 million in mental anguish damages, $750,000 in exemplary damages, and $300,000 in attorney's fees, court costs, and post-judgment interest. This appeal followed.

On June 3, 2020, the trial court entered findings of fact and conclusions of law. Among other things, the trial court found that Sheikh presented himself as a competent counselor and provided counseling and other mental health services to his congregants; on or about September 2010, Sheikh began providing mental health services, including counseling, to Doe; from 2010 to December 2016, Sheikh regularly met with Doe or communicated through phone calls or texts for the purposes of mental health services; during the counseling sessions, Sheikh counseled Doe on numerous personal and family topics; and through Sheikh's counseling of Doe and Doe's mother, Doe and her family began to trust, confide in, and depend on Sheikh, and Sheikh used this trust and dependence to begin grooming Doe for a

sexual relationship while she was still a teenager. Sheikh specifically challenges these findings of fact and argues first that he was not a mental health services provider, and Doe was not a patient.

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Wyde v. Francesconi*, 566 S.W.3d 890, 894 (Tex. App.—Dallas 2018, no pet.). When the appellate record contains a reporter's record, as in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Id.* However, unchallenged findings of fact are binding on the parties and the appellate court. *Rich v. Olah*, 274 S.W.3d 878, 884 (Tex. App.—Dallas 2008, no pet.). We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *Wyde*, 566 S.W.3d at 894. When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate there is no evidence to support the adverse finding. *Id.* When reviewing the record, we determine whether any evidence supports the challenged finding. *Id.* If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Id.*; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (more than a scintilla of evidence exists when evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions"). When an appellant challenges the factual sufficiency of the evidence on an issue, we consider all the evidence

supporting and contradicting the finding. *Wyde*, 566 S.W.3d at 894. We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Wyde*, 566 S.W.3d at 894.

We review de novo a trial court's conclusions of law. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We are not bound by the trial court's legal conclusions, but conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Wyde*, 566 S.W.3d at 894–95.

Article 81.002 of the civil practice and remedies code provides the following:

A mental health services provider is liable to a patient or former patient of the mental health services provider for damages for sexual exploitation if the patient or former patient suffers, directly or indirectly, a physical, mental, or emotional injury caused by, resulting from, or arising out of:

(1) sexual contact between the patient or former patient and the mental health services provider;

(2) sexual exploitation of the patient or former patient by the mental health services provider; or

(3) therapeutic deception of the patient or former patient by the mental health services provider.

TEX. CIV. PRAC. & REM. CODE § 81.002. As defined by section 81.001(1), "Mental health services" means assessment, diagnosis, treatment, or counseling in a professional relationship to assist an individual or group in . . . resolving emotional,

–6–

attitudinal, or relationship conflicts. *Id.* § 81.001(1). "Mental health services" provided by a member of the clergy does not include religious, moral, and spiritual counseling, teaching, and instruction. *Id.* § 81.001(7). A mental health services provider is defined as an individual, licensed or unlicensed, who performs or purports to perform mental health services, including a member of the clergy. *Id.* § 81.001(2)(C). "Patient" means an individual who seeks or obtains mental health services. *Id.* § 81.001(3). "Sexual contact" includes "sexual intercourse." *Id.* § 81.001(4)(C). "Sexual exploitation" means a pattern, practice, or scheme of conduct, which may include sexual contact, that can reasonably be construed as being for the purposes of sexual arousal or gratification or sexual abuse of any person. *Id.* § 81.001(5). A plaintiff who prevails in a suit under chapter 81 may recover actual damages, including damages for mental anguish even if an injury other than mental anguish is not shown, exemplary damages, and reasonable attorney fees. *Id.* § 81.004.

Here, the record showed Doe sought and obtained counseling from Sheikh from the time she was thirteen until she was nineteen to assist her in resolving emotional, attitudinal, and relationship conflicts. *See id.* § 81.001(1). The evidence in the record is legally and factually sufficient to show that Sheikh provided mental health services, including counseling, to Doe, and Doe was his patient as defined by chapter 81. *See id.* §§ 81.001(1), (2), (3). In making this determination, we reject Sheikh's argument that he provided Doe with only religious guidance.

Sheikh next argues that, even if he did act as a mental health services provider, there is no evidence that he was the direct or indirect cause of Doe's mental anguish. Sheikh argues the record shows Doe was "extensively abused by family members" before she moved to the United States, she was diagnosed with anxiety and panic attacks during her adolescence, and her friend's uncle tried to rape her a few months after the sexual contact with Sheikh. Sheikh argues it was almost a year after the sexual contact with Sheikh that Doe "required the services of a suicide prevention team." Sheikh "does not seek to minimize, in any way, such unfortunate circumstances," but he argues there was no competent evidence to show that other events "were not the source of her mental anguish."

Doe testified at length concerning the physical suffering and mental anguish she suffered as a result of Sheikh's actions. Doe testified that, from February 2017 until November 2017, Doe experienced "suicidal thoughts as a result of [her] interactions with" Sheikh.

Additionally, Doe presented the testimony of Amy Jones, chief executive officer for the Dallas Area Rape Crisis Center and a licensed professional counselor in Texas, to provide further evidence of injury. As he did at trial, Sheikh challenges the admission of Jones' testimony as an expert. Accordingly, we first address this challenge.

At trial, Doe's counsel tendered Jones as an expert on the nature of Sheikh's counseling services, the nature of grooming, the effect of an inappropriate

counseling relationship on victims of abuse, and the consequences and damages arising from abuse in a counseling relationship. The trial court ruled that Jones could so testify.

We review a trial court's rulings admitting expert testimony, including rulings on the reliability of expert testimony, for an abuse of discretion. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347–48 (Tex. 2015). "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. A two-part test governs whether expert testimony is admissible: (1) the expert must be qualified and (2) the testimony must be relevant and be based on a reliable foundation. *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006).

In addition to her position at the rape crisis center and qualification as a licensed professional counselor, Jones testified she had a Master's degree in Biblical counseling from Dallas Theological Seminary. Jones testified she had completed coursework in multicultural competency, and she consulted with Muslim counselors regarding Doe's case.

Throughout her career, Jones completed at least twenty-four hours of continuing education training every two years. Jones also completed training specific to trauma and expert testimony. Through the attorney general's office,

Jones completed training that certified her as a sexual assault advocate. Prior to her current position, Jones worked at Genesis Women's Shelter and the Turning Point Rape Crisis Center, in addition to working as a professional counselor working directly with individuals.

Jones testified she had reviewed the pleadings; interrogatories; depositions of Sheikh, Doe, and others; and "many many communications" between Doe and Sheikh, including Facebook messages and text messages. Jones met with Doe and discussed Doe's thoughts and feelings about Sheikh. In forming her opinions, Jones testified she relied on her ongoing training and education and her many years working with survivors of sexual violence. On this record, we conclude the trial court did not abuse its discretion in admitting Jones' testimony. *Gharda USA*, 464 S.W.3d at 347–48; *Mendez*, 204 S.W.3d at 800.

Jones testified she believed the mental anguish Doe suffered in 2017 directly resulted from Sheikh's sexual assault. Jones testified Doe's drinking and smoking and doing drugs after the sexual assault indicated Doe's inability to keep up with the intensity of her feelings. Doe's suicidal thoughts and running away from home also indicated the intensity of her reaction to the sexual assault. Jones' testimony, coupled with Doe's testimony, was sufficient evidence that Sheikh was the cause of Doe's mental anguish. In reaching this conclusion, we further conclude the evidence was legally and factually sufficient to show Sheikh's actions were in violation of chapter 81, which entitled Doe to recover damages, exemplary damages, and

attorney's fees.  *See Wyde*, 566 S.W.3d at 894.  Because we conclude chapter 81 applied in this case, we need not address Sheikh's other challenges to the trial court's judgment based on other theories of recovery.

In his next issue, Sheikh argues the trial court's award of $1.5 million for Doe's mental anguish was excessive and based on insufficient evidence.  An award for mental anguish must be supported by either (1) a substantial disruption in the plaintiff's daily routine or (2) evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger.  *Bennett v. Grant*, 525 S.W.3d 642, 648 (Tex. 2017).  There must be evidence of the existence of compensable mental-anguish damages and evidence to justify the amount awarded.  *Id.*  Non-economic damages, such as mental-anguish damages, cannot be determined by mathematical precision; by their nature, they can be determined only by the exercise of sound judgment.  *Id.*  The amount awarded must be fair and reasonable compensation, given the evidence presented.  *Id.*

Here, as stated previously, Doe's testimony and the other evidence presented persuasively demonstrated that Doe suffered a high degree of mental pain and distress.  Under the facts and circumstances of this case, we conclude sufficient evidence supported the trial court's award of $1.5 million for Doe's mental anguish.  *See id.*

Sheikh also challenges the trial court's award of exemplary damages claiming there is no clear and convincing evidence supporting the award.

In examining an award of exemplary damages, we must consider three guideposts: (1) the degree of reprehensibility of the misconduct; (2) the disparity between the exemplary-damages award and the actual harm suffered by the plaintiff or the harm likely to result; and (3) the difference between the exemplary damages awarded and the civil or criminal penalties that could be imposed for comparable conduct. *Id.* at 650.

Evaluating reprehensibility requires consideration of whether: (1) the harm inflicted was physical rather than economic; (2) the tortious conduct showed an indifference to or reckless disregard for the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions; and (5) the harm resulted from intentional malice, trickery or deceit. *Id.*

Section 41.003 of the civil practice and remedies code, which sets forth the standards for recovery of exemplary damages, provides the following:

> If the claimant relies on a statute establishing a cause of action and authorizing exemplary damages in specified circumstances or in conjunction with a specified culpable mental state, exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the damages result from the specified circumstances or culpable mental state.

TEX. CIV. PRAC. & REM. CODE § 41.003(c). A plaintiff who prevails in a suit under chapter 81 may recover, among other things, exemplary damages. *Id.* § 81.004.

Clear and convincing evidence is an elevated burden of proof with respect to an award of punitive damages: it is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the

allegations." *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex.2002). Accordingly, although we will still view the evidence in the light most favorable to the outcome and give deference to the fact-finder's reasonable resolution of disputed issues, we must be satisfied that a reasonable finder of fact could have formed a firm belief or conviction that its conclusion was true. *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 609 (Tex. 2004).

We have already discussed at length the evidence that supported the trial court's determination that Sheikh sexually exploited Doe and the reprehensibility of Sheikh's conduct towards Doe over a six-year period beginning when Doe was only thirteen years old. We conclude the trial court's award of exemplary damages was supported by clear and convincing evidence. *See* TEX. CIV. PRAC. & REM. CODE § 41.003(c); *Id.* § 81.004; *In re J.F.C.*, 96 S.W.3d at 264. Accordingly, we overrule these complaints.

We therefore affirm the trial court's judgment.

/Craig Smith/
CRAIG SMITH
JUSTICE

191329F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ZIA UL-HAQ SHEIKH, Appellant

No. 05-19-01329-CV     V.

JANE DOE, Appellee

On Appeal from the 298th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-08987.
Opinion delivered by Justice Smith.
Justices Molberg and Goldstein
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee JANE DOE recover her costs of this appeal from appellant ZIA UL-HAQ SHEIKH.

Judgment entered this 30th day of June 2021.