**Affirm and Opinion Filed January 12, 2022**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-20-00180-CV

**CHARLOTTE FORST, Appellant**
**V.**
**AVA NEAL D/B/A TEXAS TREASURES ESTATE SALES, Appellee**

**On Appeal from the County Court at Law No. 3**
**Collin County, Texas**
**Trial Court Cause No. 003-02511-2018**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Carlyle
Opinion by Justice Nowell

Charlotte Forst sued Ava Neal d/b/a Texas Treasures Estate Sales for violations of the Deceptive Trade Practices Act (DTPA) and conversion. Neal asserted a counterclaim for breach of contract. Following a bench trial, the trial court entered findings of fact and conclusions of law and a take-nothing judgment against both parties. In two issues, Forst argues the trial court erred by failing to rule on her

DTPA and conversion claims, and the evidence is insufficient to support the trial court's judgment.[1] We affirm the trial court's judgment.

TRIAL COURT'S FINDINGS OF FACT

Forst hired Neal to sell her collectable items. The parties signed a contract, which generally provided the sale would take place at Forst's home and Neal would retain a 35 percent commission for all items sold. Neal testified at trial that Forst's home was a "hoarder" situation, and Neal incurred expenses "digging out" the items to be sold and discarding other items. Because of the condition of Forst's home, the parties subsequently decided the sale should be conducted offsite.

The parties proceeded under an oral understanding rather than the terms of the written contract. Forst let Neal decide the price at which each item would sell. Neither party could account for or document the items taken from Forst's home. Forst provided an exhaustive list of items she claimed were taken from her house with some photographs. Neal testified that all unsold items were placed in Forst's driveway.

The trial court found neither party was credible.

---

[1] Forst initially argued the trial court erred by failing to file findings of fact and conclusions of law. After a supplemental clerk's record containing the trial court's findings of fact and conclusions of law was filed, Forst abandoned this issue.

**A. Take Nothing Judgment**

Although the trial court made findings of fact and conclusions of law, the court did not make any findings specific to Forst's causes of action. In her first issue, Forst argues the trial court erred by failing to rule on her DTPA and conversion claims. The trial court's judgment states in part: "IT IS THEREFORE, ORDERED ADJUDGED AND DECREED that Plaintiff taken nothing in her lawsuit against the Defendant." By entering a take-nothing judgment, the trial court ruled on the merits of Forst's causes of action. *See Odeh Group, Inc. v. Sassin*, No. 02-20-00112-CV, 2021 WL 733086, at *3 (Tex. App.—Fort Worth Feb. 25, 2021, no pet.) (collecting cases) (ruling that parties "take nothing" constituted a ruling on the merits); *Harrell v. Godinich*, No. 01-16-00338-CV, 2017 WL 6001241, at *7 (Tex. App.—Houston [1st Dist.] Dec. 5, 2017, pet. denied) (use of the phrase "take nothing judgment" by trial court in a final judgment constitutes a dismissal with prejudice on the merits of party's claim); *Howeth Investments, Inc. v. White*, 227 S.W.3d 205, 211 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("A take-nothing judgment is one on the merits."); *Nguyen v. Desai*, 132 S.W.3d 115, 117 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (ruling that parties take nothing was a dismissal with prejudice on the merits of the claims asserted). Concluding the trial court ruled on Forst's DTPA and conversion claims, we overrule Forst's first issue.

**B. Factual Sufficiency**

In her second issue, Forst argues the evidence is factually insufficient to support the adverse judgment.[2]

### 1. Standard of Review

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Wyde v. Francesconi*, 566 S.W.3d 890, 894 (Tex. App.—Dallas 2018, no pet.). When the appellate record contains a reporter's record, as it does in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Id*. Additionally, unchallenged findings of fact are binding on the parties and the appellate court. *Rich v. Olah*, 274 S.W.3d 878, 884 (Tex. App.—Dallas 2008, no pet.). We review a trial court's findings of fact under the same factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *Wyde*, 566 S.W.3d at 894. When a party challenges the factual sufficiency of an adverse finding on an issue on which she had the burden of proof at trial, the factual-sufficiency challenge will be sustained only if the trial court's findings are so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). The fact finder is the sole

---

[2] Forst's second issue states: "Standard of Review: Whether any evidence exists to support the judgment. In reviewing an insufficient evidence point, an appellate court views all the evidence in the record including any evidence contrary to the judgment." We interpret this argument to raise a factual sufficiency challenge.

judge of the witness' credibility, and may choose to believe one witness over another, and a reviewing court may not impose its own opinion to the contrary. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W. 3d 757, 761 (Tex. 2003). When conducting a factual-sufficiency review, we must consider all the evidence in the record. *Dow Chem. Co.*, 46 S.W.3d at 242.

### 2. *Legal Standards for DTPA and Conversion Claims*

"The DTPA grants consumers a cause of action for false, misleading, or deceptive acts or practices." *Ebrahimi v. Caliber Home Loans, Inc.*, No. 05-18-00456-CV, 2019 WL 1615356, at *8 (Tex. App.—Dallas Apr. 15, 2019, pet. denied) (mem. op.). The elements of a DTPA cause of action are that (1) the plaintiff is a consumer; (2) the defendant committed a wrongful act by engaging in a false, misleading, or deceptive act that is enumerated in section 17.46(b) of the Texas Business and Commerce Code, or breached an express or implied warranty, or engaged in an unconscionable action or course of action; and (3) the act was a producing cause of the plaintiff's damages. *Id.* Forst alleged Neal violated four DTPA provisions. *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(5) (representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not), (b)(7) (representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another), (b)(9)(advertising

goods or services with intent not to sell them as advertised), (b)(24)(failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed). To prove a DTPA action for failure to disclose information, the plaintiff must show (1) a failure to disclose information concerning goods or services; (2) the information was known at the time of the transaction; (3) the failure to disclose was intended to induce the plaintiff into a transaction; and (4) that the plaintiff otherwise would not have entered the transaction if the information had been disclosed. TEX. BUS. & COM. CODE § 17.46(b)(24); *see also Jasek v. Tex. Farm Bureau Underwriters*, No. 14-19-00759-CV, 2021 WL 4999008, at *3 (Tex. App.—Houston [14th Dist.] Oct. 28, 2021, no pet. h.) (mem. op.).

"To establish conversion of personal property, a plaintiff must prove (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant, unlawfully and without authorization, assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights; (3) the plaintiff made a demand for the property; and (4) the defendant refused to return the property." *Guillory v. Dietrich*, 598 S.W.3d 284, 292 (Tex. App.—Dallas 2020, pet. denied). Demand and refusal are required only if the defendant acquired possession of the property lawfully and without fault. *Id.*

Conversely, no demand is required if the defendant initially acquired possession unlawfully or wrongfully. *Id.*

### 3. Evidence Presented at Trial

Neal and Forst were the only fact witnesses to testify at trial.

#### a. Neal's Testimony

Neal contracts with people seeking to sell their personal property. Forst had a large number of collectables that she wanted to sell, including holiday decorations, decorative plates, and stamp collections. On May 9, 2018, the parties signed a contract for Neal's company, Texas Treasures Estate Sales, to conduct a sale in Forst's home of Forst's items; the contract states the sale had two objectives: to sell every available item and to maximize the proceeds from the sale.

Neal described the condition of Forst's house in detail. Forst's house was filled with her possessions, including her collectables and trash. Neal testified: "[y]ou couldn't even get through the door of her house" and "we had to get rid of all the trash and the piles of stuff she had scattered everywhere and clean it up to make it safe for people to be able to walk through the house." As a result, Neal and her employees spent time cleaning and removing trash from the house and taking trash to the dump. Forst helped with this process and was in the house at all times that Neal and her employees were in Forst's home.

Forst decided she wanted the sale held somewhere other than her house; Neal agreed to host the sale at her own house, which involved incurring expenses to

package Forst's items and rent a U-Haul to move Forst's items. The sale was to take place over two, three-day weekends.

After cleaning all of the items Forst wanted to sell, Neal researched the value of several items and priced them; for items that were in original boxes with price tags, Neal used the existing price tags. The contract did not state Forst would approve pricing, and Forst did not instruct Neal about prices she wanted her items to fetch. Neal testified: "I told her in the beginning on the second day of the sale everything is 30 percent off, and on the last day of the sale it's 50 to 75. No matter what she paid for it, she's never going to get that back." The parties' contract does not reflect that these discounts would be applied.

After the first weekend sale, Forst told Neal to stop selling her items until Neal could account for which items had been sold. However, Neal never created an inventory of the items she removed or sold, and the contract did not state she would create an inventory. When Neal replied that she could not provide an inventory, Forst responded that she would not be providing additional items for the sale the following weekend. In response, Neal said she would return all of Forst's unsold possessions; Forst said that was fine. Neal delivered 34 boxes of unsold items to Forst and left them underneath Forst's carport.

b. Forst's Testimony

When Neal initially came to Forst's house, Forst said she wanted to have an offsite sale and Neal explained why she did not think an offsite sale was a good

strategy. Forst testified: "I just really did not want to put up with someone being in my home, and I declined." Neal returned to Forst's home the following day, and Forst agreed to an in-home sale. However, Forst later reconsidered her decision because she did not want people in her house.

On May 30, Neal agreed to host a tent sale in her backyard. Neal and her team collected Forst's items in a U-Haul; Neal spent three days moving items from Forst's house to her own. Forst went to Neal's house the day before the sale began and was unhappy with how her items were displayed; many items were sitting on wet grass and were mixed with Neal's possessions.

Forst and Neal did not discuss pricing except when Forst suggested her collectable plates be sold for $25 each. Forst testified she did not rely on anything Neal said about pricing. However, if Neal had explained the prices would be discounted on the second and third days, Forst would not have contracted with Neal because "that's not generally how estate sales work."

Forst never said she wanted to end the sale after one weekend, but she called Neal and said that she did not want her items sitting outside in the rain. Neal hung up on Forst. Forst then found 35 boxes containing her items in her driveway, some boxes were under her carport but many were not because everything would not fit. No one contacted her to tell her that her belongings had been left in the driveway. Forst did not believe the 35 boxes contained all of her unsold items. She wrote a letter to Neal asking that her items be returned, but she did not receive a response.

Forst described her collectables, particularly those produced by Department 56. She maintained an Excel spreadsheet containing information about the Department 56 pieces she bought, and the spreadsheet was current through the time she decided to liquidate her collection. The spreadsheets were admitted at trial. Forst never asked Neal to take an inventory, and Neal never stated she would inventory Forst's items.

### 4. Analysis

Arguing the evidence is factually insufficient, Forst challenges finding of fact numbers 6, 7, 8, 11, and 16, which state:

> 6. [T]he parties decided it was best to conduct the sale at a different location other than the home of Forst.
> 7. The sale was conducted off-site, despite the contract provisions, due to the condition of the Forst home.
> 8. Neither party could account or document what was taken from the Forst home to be sold offsite. Forst provided a long and exhaustive list of items she claimed were taken and some photographs. The court found the claims to lack credibility.
> 11. Forst let Neal decide the price at which each item would sell.
> 16. Forst claimed to have been damaged in the amount of $23,580.52 after allowing for Neal's commission of 35%.

Each of these findings of fact is supported by the evidence. The contract provides the sale would be held at the seller's home. Neal testified about the appearance of Forst's home, and Forst's testimony confirmed that she wanted the sale held offsite. Neal agreed to have the sale at her own home. Forst was present at all times while Neal gathered Forst's items and put them in a U-Haul truck. Neal testified she did not create an inventory of Forst's items; Forst also testified she did

–10–

not request one. While Forst argues on appeal that she provided spreadsheets and photographs of her belongings that reflected which items were returned to her and which were not, the trial court found Forst's lists and photographs lacked credibility. As to the pricing of the items, the parties' contract states Neal would conduct the sale with two objectives: (1) to sell every available items and (2) to maximize the proceeds of the sale. It also states that Neal's company would appraise all items to be sold and mark prices on the items. Both parties testified they did not discuss pricing of any of Forst's items, except the collectible plates, before the sale began. Having reviewed the record, we conclude each of the challenged findings is supported by evidence presented at trial.

Forst argues she established all elements of her DTPA claim, a claim on which she bore the burden of proof. She argues the evidence shows Neal knew about the discounted pricing structure but did not inform her about it, and she would not have contracted with Neal had she known her items would be discounted throughout the weekend. Further, Forst argues Neal failed to price each item as she contracted to do and instead used some price tags from Forst's original purchase as the sale price, which does not constitute an appraisal of the value of the items and is a misrepresentation that she would appraise all items and price them accordingly.

The parties' contract states Neal would aim to maximize the proceeds from the sale. Neal testified she researched the value of several items and priced them; for items that were in original boxes with price tags, Neal used the existing price tags.

–11–

Many of the items with price tags were items such as inexpensive holiday decorations, and Neal explained she would not be able to sell them for more than the prices on the existing tags. Forst testified she did not provide any pricing information to Neal except as it related to her collectible plates, and she did not rely on any representations from Neal about pricing. The trial court found "Forst let Neal decide the price at which each item would sell," and that finding is not so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Dow Chem. Co.*, 46 S.W.3d at 242.

Forst has not shown that Neal committed a wrongful act by engaging in a false, misleading, or deceptive act or that Neal failed to disclose information with the intention of inducing Forst into a transaction. Considering all evidence in the record and giving appropriate deference to the trial court's findings of fact and assessment of the witnesses' credibility, we conclude the evidence is factually sufficient to support the trial court's finding that Forst failed to prove any DTPA violation.

Forst argues she established all elements of conversion, a claim on which she also bore the burden of proof. Her brief states Neal's "assumption and exercise of dominion over [Forst's] property appears not only in the taking of [Forst's] goods for offsite sale, but also in the unauthorized taking of goods from [Forst's] home before [Forst and Neal] ever agreed to move the sale offsite." Further, she asserts she presented evidence that not all of her unsold goods were returned to her house.

While Forst may have testified to the elements of conversion, Neal testified to the contrary. Neal testified that Forst did not want to hold an in-home sale, the parties agreed to move the sale to Neal's home, and Neal moved all of Forst's items to her own home. Forst was present in the house at all times when Neal and her employees removed the items for the sale. Further, Neal testified, she returned all unsold items to Forst after Forst canceled the second weekend of the sale. There is evidence that Neal lawfully and with Forst's authorization assumed and exercised dominion and control over Forst's property and Neal returned all of Forst's unsold property. Considering all evidence in the record and giving appropriate deference to the trial court's findings of fact and assessment of the witnesses' credibility, we conclude the evidence is factually sufficient to support the trial court's finding that Forst failed to prove Neal converted her property.

We overrule Forst's second issue.

CONCLUSION

We affirm the trial court's judgment.

200180f.p05

/Erin A. Nowell//
ERIN A. NOWELL
JUSTICE

–13–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CHARLOTTE FORST, Appellant

No. 05-20-00180-CV　　V.

AVA NEAL D/B/A TEXAS
TREASURES ESTATE SALES,
Appellee

On Appeal from the County Court at
Law No. 3, Collin County, Texas
Trial Court Cause No. 003-02511-
2018.
Opinion delivered by Justice Nowell.
Justices Reichek and Carlyle
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 12th day of January, 2022.