**Affirm in Part, Reverse and Remand in Part; Opinion Filed June 13, 2023**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00493-CV**

**PIONEER EMERALD POINTE, LLC, Appellant**
**V.**
**TEXMENIAN CONTRACTORS, LLC D/B/A RED CARPET CLEANING,**
**Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-02983**

## MEMORANDUM OPINION

Before Justices Molberg, Carlyle, and Smith
Opinion by Justice Smith

This suit arises from a dispute over whether appellee Texmenian Contractors, LLC d/b/a Red Carpet Cleaning (Red Carpet) performed certain make-ready services at an apartment complex owned by appellant Pioneer Emerald Pointe, LLC. In six issues, Pioneer challenges the trial court's judgment awarding damages, foreclosure on a mechanic's lien, and attorney's fees in favor of Red Carpet. For the reasons that follow, we reverse the award of attorney's fees, remand to the trial court for a determination of those fees, and, in all other respects, affirm the trial court's judgment.

## Background

At all times relevant to this suit, Pioneer owned the Emerald Point Apartments (the property) in Irving, Texas. Merge Property Management, LLC managed the property for Pioneer. Pursuant to an Acknowledgement of Vendor Policy, Red Carpet provided services, including painting, tape, bed and texture repairs, carpet cleaning, resurfacing, and housekeeping, to ready units at the property for new tenants.

At issue in this case are forty-six invoices, with charges totaling $30,781.82, which Red Carpet submitted to Merge for services performed during the period from May 9, 2017 to August 1, 2017. On September 28, Red Carpet sent Merge a "final notice" for payment of the past due invoices and advised that, if payment was not made by October 5, Red Carpet would have to proceed to collect, which would involve liens and court fees.

On November 8, Merge's president Beth Sickler sent a letter advising that Merge found "many invoices included services not provided" and attaching a spreadsheet showing that it disputed amounts charged in twenty-one of the invoices. Merge delivered a check, which included a "paid in full" annotation, to Red Carpet for $17,814.47, the amount charged that it did not dispute. Red Carpet marked through the annotation and returned the check to Merge.

Meanwhile, Red Carpet recorded an Affidavit Claiming Lien on the property in the amount of $30,781.82. The affidavit named Emerald Point Apartments LLC,

instead of Pioneer, as the owner of the property. Red Carpet mailed notice of the affidavit's filing to Merge and Daniel Crane, Pioneer's manager. On March 1, 2018, Red Carpet recorded an Amended Mechanic's Lien Affidavit, which named Pioneer as the property owner.

Pioneer then brought this suit against Red Carpet, seeking a declaration that Red Carpet's mechanic's lien was invalid and alleging violations of the Texas Deceptive Trade Practices Act. In a counterclaim and third-party petition, Red Carpet asserted claims for sworn account, breach of contract, and quantum meruit against both Pioneer and Merge.[1] Red Carpet also sought foreclosure of its mechanic's lien.

Following a bench trial, the trial court rendered judgment in Red Carpet's favor, finding that Pioneer "breached its contract with and was liable on a sworn account and, in the alternative for, quantum merit to Red Carpet" and awarding $30,781.82 in damages. The trial court further found that, based on the affidavit and amended affidavit, Red Carpet had a valid mechanic's lien against the property in the sum of $30,781.82 and ordered the lien foreclosed. The judgment also awarded Red Carpet attorney's fees and court costs of $80,167.11 through trial, additional contingent appellate attorney's fees, and pre- and post-judgment interest. The judgment ordered that Pioneer take nothing against Red Carpet by its claims and

---

[1] The claims against Merge were resolved on summary judgment and are not at issue in this appeal.

dismissed those claims. The trial court entered findings of fact and conclusions of law in support of its judgment.

Pioneer filed a motion to modify the judgment or for new trial, and the trial court granted the motion to modify the judgment. Thereafter, the trial court entered an amended final judgment and modified findings of fact and conclusions of law. The amended judgment, however, was identical to the original judgment. The trial court's only modifications to the findings of fact and conclusions of law were to delete (1) a finding that payment under the invoices was due within thirty days of receipt and (2) a finding and conclusion that Pioneer had waived its disputes to the outstanding invoices by not submitting any disputes in writing to Red Carpet within thirty days of the date of the invoices. Pioneer moved to modify the amended final judgment or for new trial. The motion was overruled by operation of law, and this appeal followed.

## Sworn Account/Breach of Contract

In three issues, Pioneer challenges the trial court's determination that Red Carpet was entitled to prevail on its sworn account and breach of contract claims. Pioneer contends (1) the trial court erred in relying on a dispute waiver in Red Carpet's invoices; (2) the evidence is legally and factually insufficient to sustain the trial court's judgment on the sworn account claim; and (3) the trial court erred in finding alternatively that Pioneer breached any contract because there was legally

insufficient evidence that Red Carpet performed all of the services it claimed and of Pioneer's breach and Red Carpet's damages.

### 1. Standard of Review

We apply the same standards of review that apply to a jury's verdict when reviewing the sufficiency of the evidence to support a trial court's findings of fact. *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009). When the appellate record contains a reporter's record, as in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.).

An appellant challenging the legal sufficiency of an adverse finding on which the appellant did not have the burden of proof must demonstrate there is no evidence to support the finding. *Wyde v. Francesconi*, 566 S.W.3d 890, 894 (Tex. App.—Dallas 2018, no pet.). In evaluating legal sufficiency, we view the evidence in the light most favorable to the challenged finding, indulging every reasonable inference supporting it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The evidence is legally insufficient to support the finding if (a) there is "a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Id.* at 810 (citation omitted). "When the evidence offered to prove a vital fact is so weak as to do no more than

create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010) (quoting *Kindred v. Con/Chem. Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

When a party attacks the factual sufficiency of the evidence pertaining to a finding on which the party did not have the burden of proof, we may set aside the finding only if, after considering all the evidence, it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Texas Champps Americana, Inc. v. Comerica Bank*, 643 S.W.3d 738, 744 (Tex. App.—Dallas 2022, pet. denied) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). The amount of evidence needed to affirm a judgment is far less than the amount necessary to reverse one. *Id*. (citing *Harris Cnty. v. Coats*, 607 S.W.3d 359, 380–81 (Tex. App.—Houston [14th Dist.] 2020, no pet.)).

This Court is not a factfinder. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). In a bench trial, the trial court is the sole judge of the witnesses' credibility and the testimony's weight. *Tate v. Commodore Cnty. Mut. Ins. Co.*, 767 S.W.2d 219, 224 (Tex. App.—Dallas 1989, writ denied). The trial court may believe one witness, disbelieve others, and resolve any inconsistencies in a witness's testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). If evidence conflicts, we presume the trial court resolved the inconsistency in favor of the challenged finding if a reasonable person could do so. *See City of Keller*, 168 S.W.3d at 821.

We review a trial court's conclusions of law de novo to determine if the trial court drew the correct legal conclusions from the facts. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Wright Grp. Architects–Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 199 (Tex. App.—Dallas 2011, no pet.). We uphold conclusions of law if any legal theory supported by the evidence sustains the judgment. *Wyde*, 566 S.W.3d at 895. We will not reverse a trial court's judgment based on an incorrect legal conclusion if the controlling findings of fact support the judgment on a correct legal theory. *Id.*; *Morgan Keegan & Co. v. Purdue Ave. Invs. LP*, No. 05-15-00369-CV, 2016 WL 2941266, at *2 (Tex. App.—Dallas May 18, 2016, pet. denied) (mem. op.).

2. Suit on Sworn Account

A suit on a sworn account is a procedural device for proving certain contract disputes. *See Peerless Indem. Ins. Co. v. GLS Masonry, Inc.*, No. 05-16-00875-CV, 2018 WL 3491045, at *7 (Tex. App.—Dallas July 20, 2018, no pet.) (mem. op.) (citing *Rizk v. Fin. Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 862 (Tex. 1979)). When an action is based on an open account in which a systematic record has been kept, a sworn account can constitute prima facie evidence of the claim. Tex. R. Civ. P. 185. However, a defendant's verified denial of the correctness of a plaintiff's sworn account forces the plaintiff to put on proof of its claim. *Id.*; *Rizk*, 584 S.W.2d at 862; *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 832–33 (Tex. App.—Dallas 2014, no pet.).

–7–

3. <u>Analysis</u>

Pioneer timely filed a verified denial of the correctness of Red Carpet's sworn account. Red Carpet, therefore, could not rely on the sworn account as prima facie evidence and was required to establish the following elements of its claim to recover under the account: (1) a sale and delivery of merchandise or performance of services; (2) the amount or prices were either charged in accordance with an agreement or were customary and reasonable; and (3) the amount was unpaid. *Peerless Indem. Ins.*, 2018 WL 3491045, at *7; *Parillo v. Kofahl Sheet Metal Works, Inc.*, No. 05-15-01037-CV, 2016 WL 3547965, at *3 (Tex. App.—Dallas June 28, 2016, no pet.) (mem. op.).

Pioneer challenges the sufficiency of the evidence to sustain the trial court's judgment on Red Carpet's claim, asserting it is undisputed that Red Carpet did not provide all of the invoiced services.[2] Specifically, it challenges the legal and factual sufficiency of the trial court's findings of fact five through seven:

> 5. The charges reflected on [the] forty-six (46) invoices were fair, reasonable and customary for carpet cleaning, painting, housekeeping and apartment make-ready goods and services in Dallas County, Texas;

---

[2] In its third issue, Pioneer asserts that the trial court's alternate award for breach of contract must be reversed because Red Carpet (1) provided no personal knowledge that it performed all of the services it claims; (2) could not establish that Pioneer breached the contract by tendering payment only for those services actually performed; and (3) could not establish damages. Because Red Carpet's sworn account and breach of contract claim are one and the same, we need not address Pioneer's third issue. *See* TEX. R. APP. 47.1.

6.  Red Carpet fully performed the carpet cleaning, painting, housekeeping and apartment make-ready services which were described on the forty-six (46) invoices; and

7.  Red Carpet billed Pioneer only for services that it performed, and Red Carpet did not bill Pioneer for services that it did not perform.

Pioneer also challenges the legal sufficiency of conclusions of law three, four, six, seven and eight:

3.  The amount of Pioneer's account is just;

4.  The prices charged by Red Carpet are in accordance with an agreement or, in the absence of an agreement, are the usual, customary, and reasonable prices for the goods or services;

6.  Pioneer has not put forth sufficient or proper evidence to negate Red Carpet's sworn account claim;

7.  The sum of money if paid now in cash that would fairly and reasonably compensate Red Carpet under a theory of sworn account for its injury and damages which were proximately caused by Pioneer's failure to pay for the work it receives is $30,781.82; and

8.  Red Carpet is entitled to judgment for sworn account against Pioneer in the principal amount of $30,781.82.

Evidence of Red Carpet's performance included the testimony of Red Carpet's president and owner Albert Carrizal, Red Carpet's vice-president Meri Davtyan, the disputed invoices, and other documentary evidence.

Carrizal testified that Red Carpet provided services to more than 200 apartment complexes, most of which were ongoing, long-term clients. He served as dispatcher and assigned work at the property to Liz Moreno, a Red Carpet sales and

quality control employee, and contractors Manuel Suaste and Diego Godoy. Carrizal had used Suaste and Godoy as supervisors for eighteen years or more. Carrizal had no personal knowledge as to whether the disputed services were completed or done properly and acknowledged that subcontractors make mistakes and may do the wrong work. It was impossible for Carrizal to personally inspect every apartment at every complex where Red Carpet worked, but Red Carpet had a crew of supervisors who performed inspections when needed. If something needed to be addressed, Red Carpet would receive a phone call or email, usually from an on-site manager, maintenance worker, or leasing agent.[3]

Davtyan testified that she was responsible for Red Carpet invoicing and accounts receivable. Red Carpet retained contractors to perform the services it scheduled. Those contractors made notes while they were working and sent them to Red Carpet's offices in writing or via email. Davtyan received the information, examined it, and entered it into invoices. If there was an estimate, she would determine whether the work matched the estimate and, if necessary, add any extra work into the system. Depending on client preference, invoices were either emailed the same day they were generated or sent by mail each Friday.

Davtyan identified the invoices admitted at trial as invoices for Red Carpet services at the property billed during the period from May 15, 2017 through August

---

[3] There was evidence that Moreno, who supervised work at the property, was in contact with the property manager and was not notified of any of the disputes.

10, 2017.  The invoices set out the service date, the apartment unit, a description of work completed, the initials of the contractor who performed the work, and the amount due.  Davtyan understood that Red Carpet performed all of the services described in the invoices and believed the account statement, which reflected an open balance of $30,781.82, was accurate.  Although she did not work in the field or have personal knowledge regarding the work performed, Davtyan trusted and relied on the Red Carpet contractors, who had worked for Red Carpet for many, many years.

Pioneer asserts that, because neither Carrizal nor Davtyan had personal knowledge that each disputed service was actually delivered or delivered in the manner charged, there is necessarily insufficient evidence that those services were completed or performed properly.  We disagree.  The evidence shows that Carrizal dispatched contractors to perform the work.  The contractors kept notes of their work, and Davtyan incorporated information from those notes, including a description of the services performed, in the invoices.  As business records, the invoices substitute for the personal knowledge of a testifying witness and serve as some evidence that the transactions they reflect took place.  *See Varel Mfg. Co. v. Aceteylene Oxygen Co.*, 990 S.W.2d 486, 494–95 (Tex. App.—Corpus Christi-Edinburg 1999, no pet.) (continuing balances reflected in invoices and statements admitted into evidence supplied information showing delivery of cylinders); *e.g.*, *Collins v. Guinn*, 102 S.W.3d 825, 836 (Tex. App.—Texarkana 2003, pet. denied)

–11–

(invoice for video services was evidence of videographer's performance under contract); *Lexcon, Inc. v. Gray,* 740 S.W.2d 83, 85 (Tex. App.—Dallas 1987, no writ) (invoices were some evidence to support deliveries of materials to job site); *Marquis Const. Co., Inc. v. Johnson Masonry*, 665 S.W.2d 514, 515–16 (Tex. App.—Houston [1st Dist.] 1983, writ refused n.r.e.) (subcontractor's invoices were admissible and sufficient evidence to support judgment on quantum meruit theory even though subcontractor owner was unable to personally verify all of the information in the invoices, which was based on reports from foreman and notes and other data that had been discarded); *compare Tex. Man's Shop, Inc. v. Nunn-Bush Shoe Co.*, 401 S.W.2d 716, 717 (Tex. App.—Corpus Christi 1966, no writ) (when very few of appellee's invoices specifically identified the goods allegedly sold and delivered, the evidence was insufficient to show shipment of items relied on in the account).

To be sure, Pioneer put on evidence to show that Red Carpet did not provide the disputed services. Sickler testified that she did not approve all of the invoices for payment because discrepancies "raised a flag" and she directed Alma Salas to inspect the apartment units to verify that Red Carpet actually completed the invoiced services. Salas previously managed the property and, at the time, worked as an assistant to Sickler. Based on Salas's inspections, Sickler prepared the spreadsheet identifying the disputed services on twenty-one invoices. Pioneer disputed: (1) charges for excess square footage in four units; (2) charges for tape, bed, and texture

–12–

repairs that were not performed in five units; (3) charges for resurfacing and make ready work performed by other vendors or maintenance workers in two units and, in two other units, not performed at all; (4) a charge for one unit that did not match Red Carpet's estimate; (5) a charge for excessive tile work in one unit; (6) a charge for a disposal that was not repaired and painting a fireplace that did not exist in one unit; (7) painting charges for ceilings in four units and cabinets in one unit that were not painted; and (8) double-billing for work in two units.

Salas testified that she had thirty years' experience in the apartment business and had inspected apartment units hundreds of time. She documented what she found during her inspections and, referring to copies of invoices that she annotated, a list she prepared, and Sickler's spreadsheet, testified to the deficiencies she observed.

Salas, however, acknowledged that it would have been best to conduct the inspections while the work was being performed. Although she believed she inspected the units in September 2017, she had the invoices when she inspected the units and the record contains several November 2017 emails in which she requested copies of invoices from Davtyan. Further, Sickler acknowledged that she had not reviewed the invoices until after she received the September 28, 2017 final notice for payment. Sickler delayed reviewing the invoices because funds were not available to pay them. In any event, both Sickler and Salas testified that the inspections took place a month or more after new tenants had moved into units.

Davtyan testified that, by the time she was made aware of the disputes, "[a]nybody could have moved into the apartment, walked into the apartment, maintenance guys, contractors; weather, leaks, rains" and "anything could have happened." On this record, the trial court was free to believe that, due to the delay, the inspection results may have been unreliable.

The trial court also appears to have resolved conflicts in the evidence in favor of Red Carpet. For example, Salas testified to "lots of" tape and bed charges that Red Carpet did not perform. Both Sickler and Salas testified that it would have been easy to observe the disputed tape, bed, and texture repairs. However, Salas later admitted that, had Red Carpet done a very good job, it would be difficult to see whether the work had been performed. On cross-examination, Salas testified that she did not know whether, as reflected on the spreadsheet, persons other than Red Carpet contractors had actually performed certain disputed services or whether Red Carpet had not repaired a disposal. She also acknowledged that there could be administrative mistakes in her notes. Finally, Salas testified that her vision "fluctuates" and she experienced vision problems "somewhat" during her investigation. As the sole judge of the witnesses' credibility and the weight of their testimony, the trial court was free to disbelieve Salas's testimony disputing the services.

Viewing the evidence in the light favorable to the challenged findings and indulging every reasonable inference supporting them, we conclude that the

–14–

evidence to show that Red Carpet fully performed the services described in the forty-six invoices and billed Pioneer only for services that it performed is not so weak as to do no more than create a mere surmise or suspicion of its existence. And, having also considering all of the evidence in a neutral light, we conclude the challenged findings are not clearly wrong and unjust. We also conclude that the trial court drew the correct legal conclusions from the facts and that Red Carpet was entitled to recover the unpaid amounts under the account.

Having so concluded, we necessarily disagree with Pioneer's assertion that the trial court could not have awarded the full amount of damages sought unless it determined that a waiver clause on the invoices, which required all disputes to be submitted in writing within thirty days of the date of the invoice, applied. Indeed, the trial court demonstrated that it did not rely on the clause by modifying its findings of fact and conclusions of law to delete (1) a finding that payment under the invoices was due within thirty days of receipt and (2) a finding and conclusion that Pioneer had waived its disputes to the outstanding invoices by not submitting any disputes in writing to Red Carpet within thirty days of the date of the invoices.

We overrule Pioneer's first and second issues.

## Quantum Meruit

In its fourth issue, Pioneer asserts that Red Carpet cannot recover on its alternative claim for quantum meruit because its services were performed under an express contract. Accordingly, Pioneer challenges the trial court's conclusions of

–15–

law thirteen through fifteen that: (13) it did not put forth sufficient or proper evidence to negate the quantum meruit claim; (14) the sum of money that would fairly and reasonably compensate Red Carpet under the quantum meruit theory is $30,781.82, and (15) Red Carpet is entitled to judgment for quantum meruit in the alternative to its claims for sworn account and breach of contract.

Quantum meruit is an equitable theory of recovery based on an implied agreement to pay for benefits received. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Generally, a party cannot recover under quantum meruit when there is a valid contract covering the services or materials furnished. *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 733 (Tex. 2018). A party may plead quantum meruit in the alternative to contractual claims, but recovery may not be had on both. *See generally Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 469 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Because we have concluded that the evidence is sufficient to support the trial court's judgment that Red Carpet is entitled to recover under the account, we need not address Pioneer's fourth issue on Red Carpet's alternative quantum meruit claim. *See* TEX. R. APP. P. 47.1; *Kaur-Gardner v. Keane Landscaping, Inc.*, No. 05-17-00230-CV, 2018 WL 2191925, at *5 (Tex. App.—Dallas May 14, 2018, no pet.) (mem. op.); *Fulgham*, 349 S.W.3d at 162.

## Foreclosure of Lien

In its fifth issue, Pioneer asserts the trial court erred in denying its request to declare the mechanic's lien claimed on the property invalid and granting Red Carpet's request to foreclose on the lien. Pioneer again contends the record shows Red Carpet did not provide all the services and goods claimed and also asserts that it established the lien was invalid because (1) Red Carpet's amended affidavit was not timely filed and (2) the original affidavit lacked an averment or indicia of the affiant's personal knowledge and named the wrong property owner.[4]

The Texas Property Code provides a statutory mechanic's lien, which attaches to real property to secure persons who have labored or provided material, machinery,

---

[4] Pioneer challenges the legal and factual sufficiency of findings of fact twenty-two through twenty-five that the debt owed to Red Carpet was valid and Red Carpet properly and timely recorded the original and amended affidavits and provided notice of the affidavits in accordance with the Texas Property Code. Pioneer also challenges the legal sufficiency of the following conclusions of law:

25. The debt owed by Pioneer to Red Carpet is valid;

26. The Amended Mechanic's Lien was timely and properly filed against Pioneer;

27. Red Carpet substantially complied with the statutory requirements of the Texas Property Code for perfecting a lien;

28. Red Carpet filed a lawsuit and is entitled to judgment to foreclose on the Amended Mechanic's Lien;

29. Red Carpet is entitled to recover damages in the amount of $30,781.20 through foreclosure;

33. Pioneer has not proven any of its claims for declaratory judgment against Red Carpet, and Red Carpet is entitled to a take-nothing judgment on this claim; and

36. Pioneer is not entitled to recover any damages against Red Carpet for its claims under the DTPA, Chapter 37 of the Texas Civil Practice and Remedies Code, and the Texas Property Code.

fixtures, or tools to build or repair improvements on the property. TEX. PROP. CODE ANN. §§ 53.001, 53.021; *Moore v. Brenham Ready Mix, Inc.*, 463 S.W.3d 109, 118 (Tex. App.—Houston [1st Dist.] 2015, no pet.). To successfully foreclose on a mechanic's lien, the lienholder must prove that (1) it performed the labor and its debt is valid, and (2) it substantially complied with the requirements for perfecting a lien set out in chapter 53 of the property code. *Crawford Servs., Inc. v. Skillman Intern. Firm, L.L.C.*, 444 S.W.3d 265, 268 (Tex. App.—Dallas 2014, pet. dism'd); TEX. PROP. CODE. § 53.051.

In addressing Red Carpet's contractual claim, we concluded that the evidence was legally and factually sufficient to establish that Red Carpet fully performed the services as charged. That evidence likewise supports the trial court's conclusion of law twenty-five that the debt owed by Pioneer to Red Carpet was valid.

A person claiming a lien must timely file an affidavit with the county clerk. *See* TEX. PROP. CODE § 53.052. Among other information, the affidavit must contain the name and last known address of the owner or reputed owner. *Id*. § 53.054(a)(2). The affidavit "must be signed by the person claiming the lien or by another person on the claimant's behalf . . . ." *Id*. § 53.054(a).

We liberally construe chapter 53 to protect laborers and materialmen. *Shojai v. Morrell Masonry Supply, Inc.*, No. 01-18-00204-CV, 2020 WL 5552622, at *3 (Tex. App.—Houston [1st Dist.] Sept. 17, 2020, pet. denied) (mem. op.) (citing *Hayek v. W. Steel Co.*, 478 S.W.2d 786, 795 (Tex. 1972)); *Truss World, Inc. v. ERJS,*

–18–

*Inc.*, 284 S.W.3d 393, 395 (Tex. App.—Beaumont 2009, pet. denied) ("Form requirements for . . . lien affidavits are to be liberally construed"). To that end, a party satisfies its statutory obligations by substantially complying with the requirements for perfecting a lien. *See LTF Real Estate Co., Inc. v. D & D Util. Supply, LLC*, No. 01-11-00244-CV, 2013 WL 1183300, at *3 (Tex. App.—Houston [1st Dist.] Mar. 21, 2013, no pet.) (mem. op.); *Mustang Tractor & Equip. Co. v. Hartford Accident & Indem. Co.*, 263 S.W.3d 437, 440–41 (Tex. App.—Austin 2008, pet. denied). In addressing substantial-compliance issues, courts "have distinguished between mere technical defects, which can be excused, and those defects that are more substantive in nature and, if overlooked, would read a provision out of the statute or prejudice another party." *Mustang Tractor*, 263 S.W.3d at 441.

There is no dispute that Red Carpet timely filed the original affidavit. Pioneer, however, complains that the affidavit lacked an averment or indicia of affiant Carrizal's personal knowledge and incorrectly named Emerald Point Apartments LLC, instead of Pioneer, as the owner of the property.

As we have previously held, an affidavit does not necessarily have to state that it is made on the personal knowledge of the affiant to substantially comply with section 53. *See Gill Sav. Ass'n v. Int'l Supply Co.*, 759 S.W.2d 697, 699–700 (Tex. App.—Dallas 1988, writ denied). Here, the affidavit stated that Carrizal, Red Carpet's owner, was authorized to make the affidavit on its behalf. Even though the affidavit did not explicitly state that Carrizal had personal knowledge of the matters

described therein, we conclude that it substantially complied with section 53.054. *See, e.g., Gill*, 759 S.W.2d at 699–700 (lien affidavit signed and sworn to by attorney for corporation was not invalid, even though affidavit did not state that attorney had personal knowledge of the matters stated therein).

We also conclude that the affidavit substantially complied with chapter 53 even though it incorrectly identified the owner as Emerald Point Apartments LLC. Davtyan testified that she obtained the name from the Dallas Central Appraisal District records, which identified the property owner as "Emerald Point Apartments, LLC. Daniel Crane." Sickler testified that there was confusion at Merge as to the entity that owned the property. The evidence also shows that Salas, when managing the property in 2016, identified Emerald Point, LLC as the owner in several emails to Red Carpet and never told Red Carpet that the name was incorrect.

In any event, Red Carpet sent notice of the affidavit's filing to both Merge and Crane. Sickler testified that there was no doubt that the lien was filed as to the property and both Merge and the owner received notice of the lien. Crane testified that he did not remember receiving the notice, but acknowledged that the notice was addressed to him and testified that he could have received it. Because the misnomer was a technical defect that did not mislead Pioneer or Merge to their prejudice, the affidavit substantially complied with chapter 53's requirements. *See Marathon Metallic Bldg. Co. v. Texas Nat'l Bank of Waco*, 534 S.W.2d 743, 747 (Tex. Civ. App.—Waco 1976, no writ) (affidavit substantially complied despite incorrectly

naming corporation as property owner when owners were stockholders and president of corporation); *Richardson v. Mid-Cities Drywall, Inc.*, 968 S.W.2d 512, 515 (Tex. App.—Texarkana 1998, no writ) (affidavit omitting claimant's address substantially complied when there was no allegation the omission created a lack of notice).

Pioneer also complains that Red Carpet sought only to foreclose on the amended affidavit, the amended affidavit was untimely, and the trial court's conclusion of law that the amended affidavit was timely and properly filed against Pioneer is incorrect. We disagree.

Red Carpet's live pleading references both affidavits and pleads that it has performed all conditions required of it to properly perfect its mechanic's lien against the property. Red Carpet recorded the amended affidavit when it learned that Pioneer was the owner to correct the misnomer, which was not a defect in substance. *Compare Lyda Swinerton Builders, Inc. v. Cathay Bank*, 409 S.W.3d 221, 239–240 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (late-filed amended affidavits that more than doubled builder's lien on property were invalid); *Conn, Sherrod & Co., Inc. v. Tri-Electric Supply Co., Inc.*, 535 S.W.2d 31, 34–35 (Tex. Civ. App.—Tyler 1976, writ ref'd n.r.e.) (appellant's initial affidavit bore no jurat, a defect of substance and not form; accordingly, an untimely-filed affidavit of correction could not cure the defect).

The trial court's judgment recites that, based on both affidavits, Red Carpet has a valid mechanic's lien against the property. The trial court entered findings of

fact that Red Carpet timely and properly recorded, and provided notice of, the original affidavit. It entered conclusions of law that the debt owed by Pioneer to Red Carpet is valid and Red Carpet substantially complied with the statutory requirements for perfecting its lien. On this record, we conclude the evidence supports these controlling findings of fact, and the conclusions of law are correct. As a result, even if the trial court's conclusions of law that the amended affidavit was timely filed and Red Carpet was entitled to judgment to foreclose on the Amended Mechanic's Lien are incorrect, we must uphold the trial court's judgment. *See Wyde*, 566 S.W.3d at 895 (appellate court may not reverse based on incorrect legal conclusions if controlling findings of fact support judgment on correct legal theory). For the same reason, we necessarily conclude that the trial court did not err in denying Pioneer's request for a declaration that the mechanic's lien claimed on the property invalid. [5]

We overrule Pioneer's fifth issue.

---

[5] Pioneer also asserts, challenging conclusions of law thirty-four and thirty-five, that the trial court erred to the extent the court determined that the declaratory relief Pioneer sought was unavailable because Pioneer failed to file a verified motion for summary removal of the lien. We note that neither the modified findings of fact and conclusions of law nor the amended judgment indicate that the trial court specifically decided Pioneer's claim for declaratory relief on that basis. Further, we have concluded that Red Carpet established that the lien was valid, it was entitled to foreclose on the lien, and, for that reason, Pioneer was not entitled to a declaratory judgment that the lien was invalid. For the same reason, Pioneer's challenge to conclusion of law thirty-seven, which states that Pioneer is not entitled to recover attorney's fees or costs from Red Carpet related to its claim for declaratory relief, also lacks merit.

**Attorney's Fees**

In its sixth issue, Pioneer asserts that the trial court erred in awarding Red Carpet trial and appellate attorney's fees without a legal basis and absent factually or legally sufficient evidence. It challenges the legal and factual sufficiency of the trial court's finding of fact twenty-six that Red Carpet incurred reasonable and necessary attorney's fees in the amount of $80,167.11 through trial and the legal sufficiency of conclusion of law thirty-one that Red Carpet is entitled to recover those fees and contingent appellate attorney's fees.

Pioneer first contends that Red Carpet was not entitled to recover attorney's fees related to its breach of contract, sworn account, and quantum meruit claims from Pioneer, a limited liability company, under section 38.001 of the Texas Civil Practice and Remedies Code. We agree. Under Texas law, "litigants may recover attorney's fees only if specifically provided for by statute or contract." *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011). Although section 38.001 authorizes recovery of attorney's fees for claims arising out of written contracts, sworn accounts, or quantum meruit, it did not permit recovery against a limited liability company when this suit was filed.[6] *Phoneternet, LLC v. Drawbridge Design*, No. 05-17-00890-CV, 2018 WL 3238001, at *3 (Tex. App.—Dallas July 3, 2018, no pet.) (mem. op.).

---

[6] The legislature amended section 38.001, effective September 1, 2021, to permit recovery of attorney's fees from an individual or "organization," as defined by section 1.002 of the Texas Business Organizations Code. *See* Act of May 28, 2021, 87th Leg., R.S., ch. 665, § 1, 2021 Tex. Sess. Law Serv. 1393, 1393 (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 38.001). Because this suit was filed prior to the

However, Red Carpet also sought attorney's fees under section 53.156 of the property code, which requires a trial court to award costs and attorney's fees that it deems "are equitable and just" in an action to foreclose a lien or declare a lien invalid, and section 37.009 of the civil practice and remedies code, which gives the court discretion in declaratory judgment actions to "award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. PROP. CODE § 53.156; TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. Because Red Carpet prevailed on its claim to foreclose on the lien and successfully defended against Pioneer's claim for a declaratory judgment that the lien was invalid, we conclude these statutes provided a legal basis for the trial court's award of attorney's fees.[7]

Pioneer next asserts that the attorney's fee award must be reversed because Red Carpet did not segregate and seek to recover only the fees it incurred that were recoverable. Because attorney's fees are recoverable only when provided for by statute or contract, a claimant must segregate fees that are recoverable from those that are not. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006); *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017). An exception exists when "fees are based on claims arising out of the same transaction that are so

amendment taking effect, we apply the version that was in effect when this action was commenced. *See id.* § 2.

   [7]   During trial, Red Carpet moved to amend its pleadings to assert a counterclaim under the DTPA for attorney's fees, and the trial court granted the trial amendment. Because the trial court was authorized to award attorney's fees under either section 53.156 of the property code or section 37.009 of the civil practice and remedies code, we need not address whether the award also was proper under the DTPA. *See* TEX. R. APP. P. 47.1.

intertwined and inseparable as to make segregation impossible." *Kinsel*, 526 S.W.3d at 427. A claimant need not segregate fees for discrete legal services only when those services "advance both a recoverable and unrecoverable claim that they are so intertwined." *Tony Gullo Motors*, 212 S.W.3d at 313–14. The fee claimant bears the burden of proving segregation is not required. *CA Partners v. Spears*, 274 S.W.3d 51, 82 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Whether a claimant needs to segregate attorney's fees is a question of law; the extent to which fees can or cannot be segregated among claims and parties is a mixed question of law and fact. *Tony Gullo Motors*, 212 S.W.3d at 313; *CA Partners*, 274 S.W.3d at 81.

Red Carpet asserted claims against Pioneer and Merge for sworn account, breach of contract, quantum meruit, and lien foreclosure and defended against Pioneer's declaratory judgment and DTPA claims against it. At trial, Red Carpet introduced detailed and itemized billing statements from its attorneys showing the legal services it provided. Red Carpet's counsel testified generally that he identified the types of legal services that he and his firm provided and considered, based on the invoices, whether he could segregate the fees for those services as to different claims, defenses, or parties. He concluded, "based on [his] having worked on the case that all of the issues are inextricably intertwined because they all relate to billing and a debt and whether the bills were accurate and the lien associated with that debt and

–25–

defending claims if it wasn't" and it would be "impossible" to segregate the fees out to specific claims and defenses.

In our review of the billing statements, however, we identified several charges that we conclude were severable. As an example, there were a number of charges in May 2019 for legal services related to responding to a successful summary judgment motion filed by Merge. At a minimum, Red Carpet should have segregated its fees for legal services related solely to its claims against Merge. Accordingly, we must reverse the fee award and remand the case to the trial court to determine which fees are recoverable. *See Tony Gullo Motors*, 212 S.W.3d at 314; *e.g.*, *Rapid Settlements, LTD. v. Settlement Funding, LLC*, No. 14-09-00637-CV, 2010 WL 3504182, at *4–5 (Tex. App.—Houston [14th Dist.] Sept. 9, 2010, no pet.) (mem. op.) (remand necessary for calculation of attorney's fee award when obligee failed to segregate fees attributed to litigation with obligor and litigation with third party).

Pioneer also argues the evidence was insufficient to support the award of appellate attorney's fees. We agree. To recover fees for contingent appellate services, a party must "provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020). With respect to appellate attorney's fees, Red Carpet's counsel testified only to his opinion, based on his experience as an attorney, that Red Carpet would incur

–26–

reasonable and necessary attorney's fees of $20,000 in defending against an unsuccessful appeal by Pioneer, $10,000 in the event a petition for review is filed in the Texas Supreme Court, and $25,000 in the event of an unsuccessful appeal to the supreme court. Counsel provided no "opinion testimony about the *services* [he] reasonably believe[d] will be necessary to defend the appeal." *Id.* (emphasis added); *see also KBIDC Invs., LLC v. Zuru Toys, Inc.*, No. 05-19-00159-CV, 2020 WL 5988014, at *23–24 (Tex. App.—Dallas Oct. 9, 2020, pet. denied) (mem. op.). Accordingly, we conclude the evidence is insufficient to support the award of appellate attorney's fees.

Additionally, whether a party procures appellate attorney's fees is contingent on the party's success on appeal. *Ventling v. Johnson*, 466 S.W.3d 143, 155 (Tex. 2015); *Smith v. Smith*, 757 S.W.2d 422, 426 (Tex. App.—Dallas 1988, writ denied). If an appellant is partially successful, the appellee may recover fees only for work performed on the issues where the appellant was unsuccessful. *Desio v. Del Bosque*, No. 05-21-00022-CV, 2022 WL 500025, at *5 (Tex. App.—Dallas Feb. 18, 2022, no pet.) (mem. op.) (because "the Desios' successfully appealed a portion of the attorney's fees award, Del Bosque is not entitled to appellate attorney's fees for his defense of that portion"). On remand, the appellee must segregate the recoverable appellate attorney's fees from the unrecoverable attorney's fees. *Id.*

Because Red Carpet failed to segregate recoverable fees from those that were not and the evidence is insufficient to support the award of appellate attorney's fees, we sustain Pioneer's sixth issue in part.

## Conclusion

We reverse that portion of the trial court's amended final judgment awarding $80,167.11 in attorney's fees and costs through trial and contingent appellate attorney's fees of $55,000.00. We remand for the trial court to determine, consistent with this opinion, the amount of reasonable and necessary attorney's fees to be awarded to Red Carpet. In all other respects, we affirm the trial court's judgment.

/Craig Smith/
CRAIG SMITH
JUSTICE

220493F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PIONEER EMERALD POINTE, LLC, Appellant

No. 05-22-00493-CV          V.

TEXMENIAN CONTRACTORS, LLC D/B/A RED CARPET CLEANING, Appellee

On Appeal from the 160th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-18-02983. Opinion delivered by Justice Smith. Justices Molberg and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding $80,167.11 in attorney's fees and costs through trial and contingent appellate attorney's fees of $55,000.00. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 13th day of June 2023.