**Opinion issued July 25, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00759-CV

———————————

**TONY'S CONCRETE WORK, LLC, Appellant**

**V.**

**SHELLY GOAD AND DANIEL GOAD, Appellees**

---

**On Appeal from the 348th District Court**
**Tarrant County, Texas[1]**
**Trial Court Case No. 348-302205-18**

---

## MEMORANDUM OPINION

---

[1]     Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal from the Second Court of Appeals to this Court. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases); TEX. R. APP. P. 41.3 ("In cases transferred by the Supreme Court from one court of appeals to another, the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court . . . .").

Appellees Shelly Goad and Daniel Goad contracted with Spears Construction Management, LLC to build a new house. Spears Construction retained Appellant Tony's Concrete Work, LLC as a subcontractor to prepare and lay the foundation. Following disputes about the construction of their house, the Goads sued Spears Construction, Tony's Concrete, and several other subcontractors involved in the construction project.[2] Spears Construction settled with the Goads and it assigned its claims against Appellant Tony's Concrete to the Goads.

The Goads sued Tony's Concrete for breach of contract as assignees of Spears and for negligence in their own capacity. Following a bench trial, the trial court entered judgment in favor of the Goads awarding them $412,687.52 in damages plus interests and costs of court. In two issues, Tony's Concrete argues that the trial court's judgment should be reversed, and judgment rendered in its favor because (1) the Goads' breach of contract claim is precluded by the affirmative defense of estoppel, and (2) the Goads' negligence claim is precluded by the economic loss rule.

We affirm the trial court's judgment.

---

[2] The other defendants settled with the Goads and are not parties to this appeal.

## Background

In November 2017, Shelly Goad and Daniel Goad hired Spears Construction Management, LLC, a general contractor, to build their house in Tarrant County, Texas. Spears Construction hired Tony's Concrete, a subcontractor, to prepare and lay the foundation for the house in accordance with the plans to be furnished by Spears Construction. Tony's Concrete was paid in full, and the concrete was poured on February 14, 2018.[3]

After the concrete was poured but before the project was complete, the Goads learned of problems with the foundation. They alleged that:

    a.    the foundation was too shallow, not sufficiently stiff, and not embedded into native soil (which caused erosion and severe foundation exposure), resulting in insufficient strength;

    b.    the control joints were improperly spaced, which caused excessive cracking;

    c.    the grade beams lacked rebar;

    d.    the grade beams were not located at the correct depth; and

    e.    numerous footings in the foundation were altogether missing while others were insufficient.

Concluding it would be less expensive to start the construction over than to repair the problems, the Goads demolished the construction, which was about thirty percent complete.

---

[3]    Spears Construction hired other contractors to supply and pump the concrete.

The Goads sued Spears Construction, Tony's Concrete, and several other subcontractors. Spears Construction settled with the Goads and assigned any claims it had or may have against Tony's Concrete to the Goads. The Goads then asserted a breach of contract claim against Tony's Concrete in their capacity as assignees to Spears Construction, and a negligence claim in their own capacity.[4]

## The Trial

The trial court conducted a one-day bench trial. Three witnesses testified for the Goads and one witness testified for Tony's Concrete.

### A. Robert Nicholas

Robert Nicholas, a structural engineer, testified as an expert for the Goads. He testified that the Goads contacted him when the house was "probably about 30 percent complete." He reviewed the floor plans, foundation plans, metal building plans, and geotechnical report, and he walked the property. He told the Goads he had "several concerns about both the framing and the foundation." After conducting a visual inspection, he testified he was "concerned that there [were] numerous cracks in the foundation, so that's going to make it very difficult to put any kind of a hard flooring or a stained concrete type flooring in it."[5] Nicholas

---

[4]    The Goads also alleged in their pleadings that they were third-party beneficiaries to the contract between Tony's Concrete and Spears Construction, but they did not argue that theory at trial or on appeal.

[5]    Shelly Goad testified that she and her husband intended to use "mainly stained concrete, some tile, some carpet" for flooring in the house.

4

also was concerned with other things, including "some of the other rebar that was exposed," erosion around the outside of the slab, and "what looked like soft leftover fill material[.]"

According to Nicholas, his "biggest concern with—prior to the demo was the number and the size of the cracks that had already started forming at the top of the foundation." He "thought these cracks were kind of excessive, especially for the age of this particular foundation." He also was concerned because the material "the foundation was sitting on was kind of soft" and the reinforcing in the slab "looked like it was kind of lower than it . . . should have been, not really in the center of the slab." Nicholas was worried about the thickness of the concrete, the depth of the interior beams, and erosion in the corner of the foundation and under the back patio. He testified that the control joints "were way too far apart." And he was concerned with respect to the foundation's failure to conform with a section of the International Residential Code. Nicholas made repair recommendations but the estimate to repair the problems was greater than the price of demolishing and rebuilding.

Nicholas testified that some deficiencies in the plans were in the pour site before the concrete was added to it. According to Nicholas, the general contractor usually relies on his foundation subcontractor to determine the adequacy of the foundation plans. "The third-party inspectors, especially when they're doing the

pre-pours, are usually . . . almost a waste of money. You know, you really want the guy that designed the foundation to be out there to look at it because that's the guy that knows where everything is going to be at." Nicholas acknowledged that the people who inspect the site prior to the pour are supposed to either give approval if the site conforms to the plans or they say the site is not set up correctly. He conceded that the contractor who pours the concrete cannot pour until he is advised that the site is acceptable and comports with the plans.

Nicholas reviewed the Reinforcing Steel Observation Report Alpha Testing prepared before the pour. Spears Construction hired Alpha Testing, a subcontractor, to provide "professional engineering services, including construction materials testing services." He testified that the Alpha Testing report was not really an inspection report but an observation report. According to Nicholas, it is the general contractor's responsibility to have someone on-site who knows the foundation plans to make sure all is going according to the plans. But, he said, "the foundation contractor is ultimately responsible for [the foundation] being right." Even after the general contractor and its inspector approve the pour, "that's where the concrete contractor has to use his own judgment; is it really ready, do I have the right plans, or are we going to be ripping this out again in three months."

Nicholas testified that the Alpha Testing report addressed only steel reinforcement. There was nothing in the report about the footers or their depth or whether they were there, the control joints, the depth of the concrete in the beams, or the garage. He testified that the Alpha Testing report was wrong.

After the foundation was demolished, Nicholas learned that the foundation was not in compliance with the construction plans. The footings were not as deep as they should have been or were missing altogether, and there was no reinforcing rebar at the bottom of the slab in the interior grade beams. Also, the garage did not have the slope required under the Residential Building Code.

## B.    Stephen Oakes

Stephen Oakes, who owns a construction company, testified as an expert for the Goads regarding the reasonable costs to demolish and rebuild the house. He was hired to provide pricing for rebuilding or repairing the Goads' construction project. He prepared two estimates: one based on Nicholas' report for repairs, and one for demolition and rebuilding to the stage where the construction project had stopped. According to Oakes, the cost of demolition and rebuilding was $339,020.85, but repairing the project in lieu of demolition would have cost about 30 percent more.

## C.    Shelly Goad

Shelly Goad testified that she and her husband hired Spears Construction to build their home for $650,000.  The Goads had paid Spears Construction about $300,000 when the construction stopped.

The Goads opted to demolish the foundation for two reasons.  First, they received a letter from the Homeowners' Association stating that construction of their home had to be completed within eighteen months from the date of commencement.  The letter noted that no construction had occurred for about one year and that the structure was "rapidly deteriorating."  Goad testified that the Homeowners' Association planned to start "charg[ing] by the day" if the Goads didn't "remedy" the problem, and that if they did not fix the problem, the Association would do it and bill the Goads for it.

The second reason the Goads opted to demolish the foundation was because they "found out that the foundation was . . . not as thick as it should be[.]"  They hired Oakes who gave them the cost to repair and the cost to replace.  They realized the repair would have been more expensive and would have simply been a "Band-Aid."  They also knew they would have to disclose the work done to the foundation to potential buyers if they ultimately sold the house.  The foundation was demolished in May 2019, the month after the Goads received the letter from the Homeowners' Association.

The Goads hired another builder after the demolition. The contract price for the new builder was about the same, around $650,000. According to Goad, during the demolition and rebuilding, they paid about $3,500 a month for substitute housing and continued to pay Homeowners' Association dues of around $1,000 per year and real estate taxes of approximately $9,000 per year.

**D.      Antonio Hernandez, Jr.**

Antonio Hernandez, Jr. is the Vice President of Tony's Concrete. He supervised and worked on the Goads' home. According to Hernandez, Spears Construction contacted him about the project, they discussed it, and Hernandez looked at plans for the project during a meeting with Spears Construction. His responsibility at the jobsite was "the concrete." Tony's Concrete was responsible for preparing the pour site. According to Hernandez, representatives from Tony's Concrete, Spears Construction, and Alpha Testing were there when the pour site was being prepared. After preparation of the pour site, the site was inspected by representatives from Spears Construction and Alpha Testing.

Hernandez testified that after Spears Construction and Alpha Testing gave approval for Tony's Concrete to pour the concrete, they supervised the pour. Hernandez was present from the time construction began on the pour site until the concrete pour was complete. According to Hernandez, Alpha Testing conducted testing during and after the pour was complete, and it approved the pour.

Hernandez testified that before the Goads' project, Tony's Concrete had performed twenty to thirty jobs for Spears Construction. Prior to the Goads' project, Tony's Concrete had been told "once or twice" that a foundation it poured was not right and needed correction. In those cases, Tony's Concrete did the pour again, correcting it to the satisfaction of Spears Construction. He testified that had Tony's Concrete been told that the Goads' foundation was not correct or did not comply with the plans, Tony's Concrete "absolutely" would have gone back and corrected it. According to Hernandez, Tony's Concrete first learned the foundation was not poured according to the plans after the foundation was torn out.

### Closing Arguments

The Goads argued during closing arguments that they were "left with essentially a slab that had very little reinforcement, was subject to movement and cracking, and were left with really no choice but to demo it and rebuild." They argued they had "paid for the same thing twice" and that they had to "start over because they can't rebuild on a foundation that is needing, essentially, a giant Band-Aid that they're going to have to pay more for to repair instead of to demo and replace." To replace the foundation, they had to replace the plumbing "that was encased in the foundation, as well as the building that was on top of it."

Tony's Concrete argued that the Goads' breach of contract claim lacked merit because "the undisputed evidence . . . [was that] Spears and its third-party

agent [Alpha Testing] approved not only the pour site but they approved the foundation. The only reason that the foundation was poured was because they got approval from Spears and from Alpha Testing." Tony's Concrete argued that the contract claim was barred by estoppel because Tony's Concrete was never told the foundation needed to be corrected and it "never had an opportunity from Spears before it began constructing improvements on it to go out and correct it, as it had done on other occasions." Tony's Concrete argued it had "relied upon Spears not saying, 'Hey, get back out here, this foundation is not right, you need to correct it,' which . . . we would have had to have done at our cost." The Goads responded that the elements of estoppel were not established because there was no testimony that Spears Construction had "full knowledge that something—that it was wrong and [said,] 'Do it anyway.'" And they argued there was no reliance by Tony's Concrete because the Alpha Testing report was not reviewed by Tony's Concrete until after the foundation was poured.

Tony's Concrete also argued that the Goads' negligence claim was barred by the economic loss rule. It argued that the negligence claim was in essence a breach of contract claim. The Goads responded that the economic loss rule did not bar their negligence claim because there was damage to parts of the structure beyond the foundation, which was the subject of the contract pursuant to which they asserted their breach of contract claim.

11

## The Judgment

The trial court entered a final judgment in favor of the Goads awarding them $339,020.85 for remedial damages,[6] $59,500.00 for loss of use damages,[7] $14,166.67 for mitigation damages,[8] plus pre-judgment interest, costs of court, and post-judgment interest.[9]

The trial court signed findings of fact and conclusions of law.  Among the findings of fact, the trial court found that:

4.[10]   Tony's was provided a set of foundation plans by Spears Construction that were dated January 30, 2018 (Plans).

7.   The foundation was not built in accordance with the Plans or industry standards, which proximately caused excessive cracking and a weakened foundation;

8.   The foundation was not sufficiently embedded into native "undisturbed" soil in accordance with the Plans or industry standards.

---

[6]   The remedial damages were awarded for "demolishing the partially constructed house and rebuilding to the same stage of construction."

[7]   Loss of use damages were intended to compensate the Goads for finding "alternative living arrangements" for seventeen months.

[8]   Mitigation damages were awarded to compensate the Goads for "property taxes and HOA fees related to the alternative housing" for seventeen months.  While living in alternative housing, the Goads continued to pay property taxes and Homeowners' Association fees for the house they were building.

[9]   The judgment does not specify whether the damages were awarded for the Goads' contract claim or their negligence claim.

[10]   We number the trial court's findings and conclusions to correspond to the numbering in the trial court's findings of fact and conclusions of law.

9.	There were numerous footings that did not match the Plans or industry standards because they were altogether missing, too shallow, or did not contain the required steel reinforcement.

10.	The interior grade beams did not comply with the Plans or industry standards because they did not contain the requisite reinforcing steel and were too shallow.

11.	The perimeter grade beams also did not comply with the Plans or industry standards because they were too shallow and not properly embedded into native soil.

12.	The control joints did not comply with industry standards because they were spaced too far apart, proximately causing excessive cracking.

13.	The garage was not sloped as required by industry standards and the Plans.

18.	But for Tony's failure to abide by the Plans and reasonable standards of care for a reasonable and prudent company in the foundation construction industry, the foundation would likely not have been excessively cracked and weakened to the point that the foundation, the plumbing encased in the foundation, and the partially constructed house on top of the foundation had to be demolished and rebuilt.

The trial court also concluded that:

2.	Tony's breached [its] contract [with Spears Construction] by failing to follow the Plans and the applicable codes (Residential Building Code, American Concrete Institute, and Portland Cement Association). These deficiencies proximately caused excessive cracking and a weakened foundation, ultimately requiring the partially constructed house to be demolished.

3.	Tony's failed to perform the job in accordance with the reasonable standards of care for a reasonable and prudent company in the foundation construction industry.

13

4.  But for Tony's failure to abide by the Plans and reasonable standards of care for a reasonable and prudent company in the foundation construction industry, Plaintiffs' foundation would likely not have been excessively cracked and weakened requiring the partially constructed house to be demolished and rebuilt.

8.  Tony's failed to present sufficient evidence at trial that it was excused from complying with the contract.

9.  Tony's failed to present sufficient evidence at trial that it was excused from complying with industry standards.[11]

This appeal ensued.

## Standard of Review

In a bench trial, the trial court, as fact finder, is the sole judge of the credibility of witnesses. *Bell Helicopter Textron, Inc. v. Burnett*, 552 S.W.3d 901, 913 (Tex. App.—Fort Worth 2018, pet. denied) (citing *Shear Cuts, Inc. v. Littlejohn*, 141 S.W.3d 264, 270–71 (Tex. App.—Fort Worth 2004, no pet.)). The trial court may consider all surrounding facts and circumstances in connection with the testimony of each witness, and it may accept or reject all or any part of that testimony. *Id.* We review the trial court's findings after a bench trial using the same standard of review we use to review jury findings. *O'Neal v. Dale*, No. 02-20-00173-CV, 2021 WL 210848, at *5 (Tex. App.—Fort Worth Jan. 21, 2021, no pet.) (mem. op.) (citing *Lloyd Walterscheid & Walterscheid Farms, LLC v. Walterscheid*, 557 S.W.3d 245, 257 (Tex. App.—Fort Worth 2018, no pet.)); *see*

---

[11]  Tony's Concrete requested additional and amended findings of fact and conclusions of law but the trial court did not respond.

*also Robbins v. Robbins*, 550 S.W.3d 846, 854 (Tex. App.—Fort Worth 2018, no pet.) ("A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of the evidence to support them by the same standards."). We defer to the trial court's findings of fact provided they are supported by the record. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020). "When the appellate record includes a reporter's record, findings of fact on disputed issues are not conclusive and may be challenged for the sufficiency of the evidence." *Super Ventures, Inc. v. Chaudhry*, 501 S.W.3d 121, 126 (Tex. App.—Fort Worth 2016, no pet.) (citing *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003)).

We review a trial court's conclusions of law *de novo*. *O'Neal*, 2021 WL 210848 at *5 (citing *Walterscheid*, 557 S.W.3d at 257); *see also Reliance Nat'l Indem. Co. v. Advance'd Temps., Inc.*, 227 S.W.3d 46, 50 (Tex. 2007) ("Appellate courts review legal determinations de novo, whereas factual determinations receive more deferential review based on the sufficiency of the evidence."); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002) (citation omitted) ("The appellant may not challenge a trial court's conclusions of law for factual insufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness."). A conclusion of law will not be reversed unless it is erroneous as a matter of law. "Even an

15

incorrect conclusion of law will not require a reversal if the controlling findings of fact support a correct legal theory." *Garner v. Long*, 49 S.W.3d 920, 922 (Tex. App.—Fort Worth 2001, pet. denied) (citing *Piazza v. City of Granger,* 909 S.W.2d 529, 532 (Tex. App.—Austin 1995, no writ)).

## Breach of Contract

During trial, Tony's Concrete argued that the Goads were estopped from asserting a breach of contract claim because Spears Construction and Alpha Testing had "approved the foundation," and thus the Goads could not "claim that Tony's did anything wrong because Tony's would not have gone forward without the approval of Spears and Alpha Testing[.]"  On appeal, Tony's Concrete argues that "[t]here is no evidence in the record that the foundation caused the Goads to order the demolition of the partially constructed home."  Tony's Concrete further argues:

> The Goads['] trial petition judicially admits that Spears Construction and Alpha Testing were hired with the responsibility to "ensure" that the Goads' "foundation" was in "compliance with the Project[']s specification and plans."[12]

---

[12]  In support of its judicial admission argument, Tony's Concrete cites to the Goads' Fifth Amended Petition, which states:

> Alpha was hired as a third-party inspector to inspect Plaintiffs' foundation to ensure its compliance with the Project's specifications and plans.  According to Alpha's reinforcing steel report . . . the reinforcing steel was "compliant" with the Project's January 30, 2018 specifications and plans provided by Spears Construction.

The Seventh Amended Petition, the live petition at trial, does not refer to Alpha Testing.

16

. . .

[T]he trial court's finding that the "partially constructed house on top of the foundation had to be demolished and rebuilt" is contrary to the judicial admission in the Goads' trial pleading that it was not until the demolition in May of 2019 that any problem with the foundation was discovered.[13] It was the metal buildings being constructed on the foundation that caused the Goads to order the demolition, according to their trial pleading. There is no evidence in the record that the foundation caused the Goads to order the demolition of the partially constructed home. Therefore, the trial court's finding that the partially constructed home on top of the foundation had to be demolished was never the cause of the demolition of the partially constructed home.

The Goads argue that in April 2019, before the demolition, Spears Construction sent Tony's Concrete "notice of a potential claim" that the "concrete foundation was negligently poured." They argue the notice letter offered Tony's Concrete the opportunity "to inspect the foundation prior to the Goads' demolition." Moreover, even though Tony's Concrete claims to have relied on Alpha Testing's report in constructing the foundation, the Goads argue that Hernandez acknowledged during trial that Alpha Testing's report was not received until "[s]ometime after [the pour] was done."

To prevail on a breach of contract claim, a plaintiff must establish that (1) a valid contract exists between the plaintiff and the defendant; (2) the plaintiff

---

[13] According to Tony's Concrete's appellate brief, this judicial admission is from the Goads' Seventh Amended Petition, in which they allege they discovered foundation problems "[d]uring the demolition on the Project in May of 2019."

17

tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages. *Foster v. Nat'l Collegiate Student Loan Tr. 2007-4*, No. 01-17-00253-CV, 2018 WL 1095760, at *9 (Tex. App.—Houston [1st Dist.] Mar. 1, 2018, no pet.) (mem. op.) (quoting *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.–Houston [14th Dist.] 2008, no pet.)). Tony's Concrete does not dispute that there was a contract between Spears Construction and Tony's Concrete, or that Spears Construction assigned its claims against Tony's Concrete to the Goads.[14] Rather, Tony's Concrete argues that the Goads' breach of contract claim is precluded both by estoppel[15] and the Goads' judicial admissions. We discuss each argument in turn.

---

[14] As an assignee, the Goads stand in Spears Construction's shoes and may assert only those rights that Spears Construction could assert. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex. 2000).

[15] In its First Amended Answer to Plaintiffs' Fifth Amended Petition—the latest answer in the clerk's record—Tony's Concrete asserted a general denial and two affirmative defenses: estoppel and laches. Tony's Concrete does not assert its laches defense on appeal. In asserting the estoppel defense, Tony's Concrete argued that the plaintiffs were

> [E]stopped from recovering under breach of contract or any other claim against Tony's Concrete because Tony's Concrete poured the foundation for the house and garage under the direction and supervision of Jack Spears acting for Spears Construction after he and Defendant Alpha Testing, Inc. . . , who was hired by Spears Construction, approved the pour site after inspecting it, which had the site not been in accordance with the construction plans, they were obligated to inform Tony's Concrete so it could make the corrections necessary to conform to the plans prior to pouring the concrete. Additionally, Tony's Concrete during the pour placed saw joints in the concrete where Jack Spears directed while Alpha Testing took break cylinders to determine the concrete was in

18

## A. Estoppel

Tony's Concrete identifies the elements of equitable estoppel as "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 515–16 (Tex. 1998) (citing *Schroeder v. Tex. Iron Works, Inc.,* 813 S.W.2d 483, 489 (Tex. 1991)).[16] Tony's Concrete argues that "[t]he undisputed facts the trial court received during the bench trial are classic estoppel." We disagree.

There was no testimony at trial that Spears Construction knowingly made any false representations or concealed material facts with the intent that Tony's Concrete rely to its detriment on those representations or concealed facts. "The

---

accordance with the construction plans. Finally, at the conclusion of the pour after the concrete had set for the proper amount of time, Alpha Testing tested the concrete. Following the pour, Tony's Concrete received a copy of a report from Alpha Testing to Spears Construction showing the pour site was in conformity with the "contractors['] drawings" and that the concrete compression test of the concrete [sic] was "compliant with project specifications."

[16] Tony's Concrete cites a single equitable estoppel case: *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507 (Tex. 1998), in which the Supreme Court held equitable estoppel did not bar the assertion of a limitations defense. Tony's Concrete cites the case solely for its recitation of the elements of estoppel. *See id.* at 515–16. It does not discuss the facts of the case, which are distinguishable.

19

doctrine of equitable estoppel can only be invoked where the conduct of a party has been such as to induce action in reliance upon it and where it would operate as a fraud upon the assured if the party was afterwards allowed to disavow its conduct." *Sparkman v. Cunningham*, No. 11-10-00304-CV, 2012 WL 3264483, at *2 (Tex. App.—Eastland Aug. 9, 2012, no pet.) (mem. op.) (citing *Mass. Bonding & Ins. Co. v. Orkin Exterminating Co.,* 416 S.W.2d 396, 401 (Tex. 1967)); *see also Wyde v. Francesconi*, 566 S.W.3d 890, 897 (Tex. App.—Dallas 2018, no pet.) ("The elements of equitable estoppel are substantially the same as the elements of fraud.") (citing *Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 524). In the absence of testimony—or even any allegations—regarding any purportedly fraudulent acts by Spears Construction, we hold "classic [equitable] estoppel" does not preclude the Goads' contract claim.

In any event, we do not believe that Tony's Concrete is asserting an equitable estoppel defense. Rather, it appears that Tony's Concrete's defense is one of quasi-estoppel. Indeed, despite its enumeration of the elements of equitable estoppel, Tony's Concrete relies on *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857 (Tex. 2000), where a quasi-estoppel defense of acceptance of the benefits was pled.

"Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. The doctrine applies when it

20

would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Id.* at 864 (citing *Atkinson Gas Co. v. Albrecht,* 878 S.W.2d 236, 240 (Tex. App.—Corpus Christi 1994, writ denied)); *see also Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied) (noting quasi-estoppel "is a long-standing doctrine applied to preclude contradictory positions: it precludes a person from asserting, to another's disadvantage, a right inconsistent with a position previously taken"). Quasi-estoppel, or estoppel by contract, "is not actually one of estoppel, as estoppel in pais; it is just another way of stating that a party is bound by the terms of his contract unless it is void, annulled, or set aside in some way." *Sparkman*, 2012 WL 3264483 at *2 (citing *Stevens v. State Farm Fire & Cas. Co.,* 929 S.W.2d 665, 672 (Tex. App.—Texarkana 1996, writ denied)).[17] Put another way, quasi-estoppel "forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid corresponding obligations or effects." *Brooks v. Brooks*, 257 S.W.3d 418, 423 (Tex. App.—Fort

---

[17] Reliance is not an element of quasi-estoppel. *Sparkman v. Cunningham*, No. 11-10-00304-CV, 2012 WL 3264483, at *3 (Tex. App.—Eastland Aug. 9, 2012, no pet.) (citing *Steubner Realty 19, Ltd. v. Cravens Rd. 88, Ltd.,* 817 S.W.2d 160, 164 (Tex. App.—Houston [14th Dist.] 1991, no writ)); *see also Brooks v. Brooks,* 257 S.W.3d 418, 423 (Tex. App.—Fort Worth 2008, pet. denied) (explaining that "unlike equitable estoppel, quasi-estoppel requires no showing of misrepresentation or detrimental reliance").

21

Worth 2008, pet. denied) (citations omitted); *see also Richardson v. Allstate Tex. Lloyd's*, 235 S.W.3d 863, 865 (Tex. App.—Dallas 2007, no pet.) ("Under Texas law, the affirmative defense of estoppel applies in a breach-of-contract claim when a party accepts a benefit voluntarily *and* with knowledge of all material facts.") (emphasis in original). But there "can be no ratification or estoppel from acceptance of the benefits by a person who did not have knowledge of all material facts." *Clark v. Cotten Schmidt, L.L.P.*, 327 S.W.3d 765, 770 (Tex. App.—Fort Worth 2010, no pet.) (citing *Frazier v. Wynn,* 472 S.W.2d 750, 753 (Tex. 1971)).

In *Lopez*, cited but not discussed by Tony's Concrete, the plaintiffs' former counsel settled a wrongful death case in which it was paid a forty-five percent contingency fee. 22 S.W.3d at 859. After the settlement was signed, the funds were disbursed. *Id.* at 860. Three years later, the plaintiffs sued their former counsel for breach of contract, breach of fiduciary duty, fraud, negligence, and deceptive trade practices arguing that the contingency fee should have been forty percent. *Id.* The trial court granted the attorneys' motion for summary judgment and the court of appeals reversed, rendering judgment for the plaintiffs in the amount of $750,000, representing the disputed five percent of the contingency fee. *Id.* The Supreme Court reversed the court of appeals' judgment on the contract and fiduciary duty claims, rendering judgment that the plaintiffs take nothing on those claims, and it remanded the remaining claims to the trial court. *Id.* at 864.

22

The Supreme Court rejected the attorneys' quasi-estoppel acceptance of the benefits defense raised in connection with the plaintiffs' fraud, negligence, and deceptive trade practice claims.[18] *Id.* at 863 (holding plaintiffs' "initial acceptance of a lesser portion of [a] settlement is not inconsistent with their later assertion that they were entitled to more").

We are not persuaded by Tony's Concrete's quasi-estoppel arguments or its citation to *Lopez*. In its appellate brief, Tony's Concrete only argues with respect to Spears Construction that "Spears Construction and Alpha Testing were hired with the responsibility to 'ensure' that the Goads' 'foundation' was in 'compliance with the Project[']s specification and plans'" and that it would be "unconscionable" to allow someone "to maintain a position inconsistent with the one to which he [acquiesced]." But there is no real discussion with citations to the record or applicable authorities that Spears Construction had "knowledge of all material facts" prior to accepting the benefits of the contract with Tony's Concrete

---

[18]    In *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 859 (Tex. 2000), Lopez's contingency fee agreement with its former counsel awarded it forty percent of any recovery and forty-five percent of any recovery if the case was "appealed to a higher court." The parties' dispute stemmed from the issue of whether the appellate process was initiated when defense counsel filed a cash deposit in lieu of a cost bond after the trial court's verdict in favor of Lopez and while settlement negotiations were taking place. Lopez argued that merely initiating the appellate process was not tantamount to "appeal[ing] to a higher court" as contemplated by the contingency agreement. *Id.* at 861. The Supreme Court held that when the cash deposit was made, the case was "'appealed to a higher court' under the contract's terms." *Id.*

23

and later maintained an inconsistent position.[19]  *See Benton v. Contractor's Supplies, Inc.*, No. 12-20-00207-CV, 2021 WL 4613867, at *7 (Tex. App.—Tyler Oct. 6, 2021, no pet.) (mem. op.) (holding appellant concrete subcontractor "has not argued nor does the evidence disclose that [materials supplier] accepted payments from [general contractor] to avoid a corresponding obligation or effect, therefore the doctrine [of quasi-estoppel] is inapplicable").  Given the scant briefing on this topic, the dearth of testimony regarding Spears Construction's alleged knowledge, and Hernandez's trial testimony that the foundation work, in fact, was not performed according to the plans, Tony's Concrete's quasi-estoppel defense lacks merit.

## B.    Judicial Admissions

Tony's Concrete also argues on appeal that the Goads were precluded from advancing their breach of contract claim "based on the judicial admissions in the Goads['] trial pleading as well as the trial record."  It argues that the trial court's finding of fact that the "partially constructed house on top of the foundation had to be demolished and rebuilt" is not supported by the "judicial admission in the

---

[19]    Tony's Concrete notes in its statement of facts that Hernandez testified that the pour site was approved after being inspected by representatives of Spears Construction and Alpha Testing.  And it states that Spears Construction and Alpha Testing representatives also supervised the pour.  But it does not explain how this fact alone is sufficient to establish its quasi-estoppel defense or to preclude the Goads' breach of contract claim.

Goads' trial pleading that it was not until the demolition in May of 2019 that any problem with the foundation was discovered."

Tony's Concrete did not argue in the trial court that its estoppel defense was based on judicial admissions. Rather, Tony's Concrete argued during closing argument that its estoppel defense was based on the approval given by Spears Construction and Alpha Testing, who "approved not only the pour site but they approved the foundation. The only reason that the foundation was poured was because they got approval from Spears and from Alpha Testing." Tony's Concrete argued that when the foundation was complete, Spears Construction "approved it by beginning to construct improvements on it. They never . . . contacted my client and said, 'This foundation is not in accordance with plans, get out here and get it corrected[.]'" Because Tony's Concrete did not raise the judicial admission argument in the trial court, he is precluded from raising it now for the first time on appeal. *See $1,943.76 In U.S. Currency v. State*, No. 2-07-021-CV, 2009 WL 213438, at *5 (Tex. App.—Fort Worth Jan. 29, 2009, pet. denied) (mem. op.) (stating appellate court may not address issue that was not raised in the trial court).

Even if Tony's Concrete had preserved the issue, Tony's Concrete would not prevail. Tony's Concrete argues that the Goads' petition "judicially admits that Spears Construction and Alpha Testing were hired with the responsibility to 'ensure' that the Goads' 'foundation' was in 'compliance with the Project[']s

25

specification and plans.'" If the "trial pleading" to which Tony's Concrete refers is the Goads' Fifth Amended Petition, that petition was superseded by the Seventh Amended Petition, which was the live pleading at trial. "Statements in a superseded pleading cannot be considered judicial admissions and must be introduced into evidence as any other admission before it can be considered as evidence." *Huff v. Harrell*, 941 S.W.2d 230, 239 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied). "The discarded pleading is still a statement that can be introduced in evidence as an admission, but it is not conclusive." *Loy v. Harter*, 128 S.W.3d 397, 407 (Tex. App.—Texarkana 2004, pet. denied); *see also Quick v. Plastic Sols. of Tex., Inc.*, 270 S.W.3d 173, 185 (Tex. App.—El Paso 2008, no pet.) ("Statements contained in superseded pleadings are not conclusive and indisputable judicial admissions.") (citing *Sosa v. Cent. Power & Light*, 909 S.W.2d 893, 895 (Tex. 1995)).

The Goads' Fifth Amended Petition was not admitted into evidence or even discussed at trial. Although the trial court took judicial notice of the Fifth Amended Petition, that is not tantamount to admitting it into evidence. *See Gonzalez v. Gonzalez*, 679 S.W.3d 221, 230 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (holding that while trial court can take "judicial notice of the fact that a party's [property] inventory has been filed," "unless a party's inventory is admitted into evidence at trial, it cannot be relied upon as evidence") (citing *Barnard v.*

26

*Barnard*, 133 S.W.3d 782, 788–89 (Tex. App.—Fort Worth 2004, pet. denied)) ("As a general rule, documents not admitted into evidence are not considered by an appellate court."). Although a "trial court can take judicial notice of the *existence* of certain documents in its records," it "'may not take judicial notice of the *truth* of factual statements and allegations contained in the pleadings, affidavits, or other documents in the file.'" *Kenny v. Portfolio Recovery Assocs., LLC*, 464 S.W.3d 29, 34 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (emphasis in original) (quoting *Guyton v. Monteau,* 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.)). Thus, to the extent that Tony's Concrete's estoppel argument is based on any statements in the Goads' Fifth Amended Petition, the argument lacks merit.

With respect to the Seventh Amended Petition, Tony's Concrete argues that the trial court's finding that the "partially constructed house on top of the foundation had to be demolished and rebuilt" is contrary to the "judicial admission in the Goads' trial pleading that it was not until the demolition in May of 2019 that any problem with the foundation was discovered." The finding of fact about which Tony's Concrete complains states:

> But for Tony's failure to abide by the Plans and reasonable standards of care for a reasonable and prudent company in the foundation construction industry, the foundation would likely not have been excessively cracked and weakened to the point that the foundation, the plumbing encased in the foundation, and the partially constructed house on top of the foundation had to be demolished and rebuilt.

27

It is unclear how this finding from the trial court, or the judicial admission in the Seventh Amended Petition which purportedly contradicts this finding, precludes the Goads' breach of contract claim. Tony's Concrete never connects the dots in this respect. In any event, we are not persuaded by the argument.

Notwithstanding the allegation in the Goads' Seventh Amended Petition, and contrary to Tony's Concrete's assertion, there is evidence in the record that the foundation problems caused the Goads to order the demolition.[20] Nicholas testified that the Goads contacted him prior to the demolition. He reviewed the floor plans, the foundation plans, the metal building plans, a geotechnical report, and he walked the property before the demolition. He testified that he had "several concerns" with "the framing and the foundation." He testified about "numerous cracks in the foundation," exposed rebar, erosion around the outside of the slab, and "what looked like soft leftover fill material[.]" Nicholas was concerned about "the number and the size of the cracks that had already started forming at the top of the foundation," the material the foundation was sitting on, which was "kind of

---

[20]    Ordinarily, facts that are alleged or admitted in a party's live pleadings are accepted as true and are binding on the pleader. *Bernal v. Chavez*, 198 S.W.3d 15, 19 (Tex. App.—El Paso 2006, no pet.) (citing *Hous. First Am. Savings v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983)). However, if evidence is introduced that contravenes the admission, the opposing party must object to the introduction of the evidence, or the live pleading will not be treated as a binding judicial admission. *Id.* at 769. Tony's Concrete did not object to any testimony elicited from the Goads with respect to the reason for the demolition.

soft," the reinforcing in the slab, which "looked like it was kind of lower than it . . . should have been, not really in the center of the slab," the thickness of the concrete, the depth of the interior beams, erosion in the corner of the foundation and under the back patio, and the control joints that "were way too far apart."[21]

Shelly Goad also testified that the Goads opted to demolish the foundation in part because they found it "was not as thick as it should be[.]"  The Goads also opted to demolish the foundation because it was less expensive than the repairs would have been, and because the repairs would have been a "Band-Aid" for the foundation problems.  There is thus evidence in the record supporting the trial court's finding that "the plumbing encased in the foundation, and the partially constructed house on top of the foundation had to be demolished and rebuilt" as a result of Tony's Concrete's failure in pouring the foundation.

Tony's Concrete last complains about a single conclusion of law, in which the trial court concluded that:

> Tony's breached [its] contract [with Spears Construction] by failing to follow the Plans and the applicable codes (Residential Building Code, American Concrete Institute, and Portland Cement Association). These deficiencies proximately caused excessive cracking and a weakened foundation, ultimately requiring the partially constructed house to be demolished.

---

[21]     Tony's Concrete erroneously states in its brief that Nicholas "outlined all the problems with the partially constructed house without ever mentioning the foundation."  On the contrary, as set forth above, Nicholas testified as to several concerns he had about the foundation prior to demolition of the partially constructed house.

29

Tony's Concrete argues that the conclusion "is defeated by estoppel based on judicial admissions in the Goads['] trial pleading as well as the trial record," but it does not identify the pleading or any testimony in support of its argument. The argument is thus waived. *See Turner v. Turner*, No. 14-00-00175-CV, 2001 WL 1098068, at *2 (Tex. App.—Houston [14th Dist.] Sept. 20, 2001, no pet.) (mem. op.) ("It is not this court's responsibility to sift the record to find error or evidence in support of appellant's argument.") (citations omitted); *see also* TEX. R. APP. P. 38.1(h) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

Even if Tony's Concrete had not waived the issue, it would not prevail. Tony's Concrete's sole witness, Hernandez, conceded during trial that the foundation was not built according to the plans, stating, "I believe after they tore [the foundation] out is when I learned that it wasn't to—accordance to the plans."

Given the testimony and exhibits admitted at trial, we conclude Tony's Concrete's estoppel argument lacks merit and that the trial court properly found in favor of the Goads on their breach of contract claim. We overrule Tony's Concrete's first issue.

## Negligence

The Goads asserted a breach of contract claim and a negligence claim against Tony's Concrete. Tony's Concrete argues that the economic loss rule bars

the Goads' negligence claim because "[a]ll of the damages alleged for the negligence claim are economic. The Goads are not alleging a negligence claim for personal injury or for property damage independent of the home which is the subject of the contract at issue."

The Goads respond that the economic loss rule does not apply because the contract between Tony's Concrete and Spears Construction concerned "construction of the foundation, which did not encompass the plumbing or the vertical construction on top of the foundation, both of which were damaged by [Tony Concrete's] acts and omissions." In any event, they argue that even if their negligence claim were barred by the economic loss rule, the trial court's judgment should be affirmed because their claim for breach of contract supports the trial court's judgment and the award of damages in their favor.

The economic loss doctrine "generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014). Courts have defined "economic loss" as "'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property.'" *Bass v. City of Dall.*, 34 S.W.3d 1, 9 (Tex. App.—Amarillo 2000, no pet.) (quoting

31

*Thomson v. Espey Huston & Assocs., Inc.,* 899 S.W.2d 415, 421 (Tex. App.—Austin 1995, no writ)). If a plaintiff's injury stems from "a failure to fulfill a contractual obligation," the economic loss rule "bars recovery of economic losses in tort." *Gurka v. Trevino,* No. 01-21-00039-CV, 2022 WL 3588739, at *4 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, no pet.) (citing *Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549 S.W.3d 256, 268 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd)). But the rule does not bar all tort claims that "arise out of a contractual setting." *Id.* (citing *Chapman*, 445 S.W.3d at 718).[22]

The trial court entered a final judgment in favor of the Goads awarding them $339,020.85 for remedial damages, $59,500.00 for loss of use damages, $14,166.67 for mitigation damages, and pre-judgment interest, costs of court, and post-judgment interest. [3 CR 1464-45] The final judgment does not specify whether the award of damages is based on the Goads' contract claim or the negligence claim.

We have already concluded that the Goads' breach of contract claim was not precluded by estoppel. And Tony's Concrete did not challenge the sufficiency of the evidence supporting the trial court's award of damages as it concerns the Goads' breach of contract claim. Thus, because we have affirmed the trial court's

---

[22] The applicability of the economic loss rule is a case-specific determination. *Barzoukas v. Found. Design, Ltd.*, 363 S.W.3d 829, 838 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ("The economic loss rule's reach depends on specific circumstances.").

final judgment as it concerns the Goads' breach of contract claim and the final judgment damages could have been awarded for that claim, we need not decide whether the Goads' negligence claim is barred by the economic loss rule. While we are not bound by the trial court's conclusions of law, we will uphold them if the judgment can be sustained on any legal theory supported by the evidence. *See Lockheart Chapel, Inc. v. Katim Endeavors, Inc.*, No. 02-21-00405-CV, 2022 WL 3456834, at *2 (Tex. App.—Fort Worth Aug. 18, 2022, no pet.) (mem. op.) (citing *Wyde*, 566 S.W.3d at 894); *Whitaker v. Lahmon*, 873 S.W.2d 770, 771 (Tex. App.—Waco 1994, no writ) ("Our duty is to affirm the judgment of the trial court if it was proper under any legal theory.") (citing *Birdo v. Ament,* 814 S.W.2d 808, 810 (Tex. App.—Waco 1991, writ denied)); *Sixty-Seven Properties v. Cutsinger Elec. Contractors, Inc.*, 536 S.W.2d 268, 271 (Tex. App.—Corpus Christi 1976, no writ) ("It is a well settled rule of law in this State that an appellate court will affirm the judgment of a trial court on any legal theory of law applicable to the case that has support in the evidence. . . .").

We overrule Tony's Concrete's second issue.

## Conclusion

We affirm the trial court's judgment.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Hightower, Rivas-Molloy, and Farris.